## Davis' Administrator, et al. v. Cincinnati, New Orleans & Texas Pacific Railway Company.

(Decided November 2, 1916.)

### Appeal from McCreary Circuit Court.

1. Death—Action for Causing Death—Negligence—Submission to Jury.—In a suit against a railroad company to recover damages for the death of a fireman who was killed in a wreck of the train which, as plaintiff alleged, was produced by the carelessness and negligence of the defendant in the reckless speed at which the train was running, and in failing to have its tracks in reasonable

repair, evidence examined and held sufficient to submit the issues of negligence charged against the defendant to the jury.

2. Death — Action for Causing Death—Who May Sue—Employers' Liability Act.—In a suit under the Federal Employers' Liability Act no recovery can be had except for the benefit of those who have a pecuniary interest in the continued life of the deceased, and who have an expectation of receiving pecuniary benefits from him should he continue to live.

3. Death—Action for Causing Death—Persons Who May Sue—Employers' Liability Act.—Such a suit cannot be maintained for the benefit of the mother of the deceased when it is shown that the latter left surviving him an infant daughter, and it further appearing that the father, as well as brothers and sisters of the deceased, are living with the mother, whose wants and necessities are supplied from the earnings of these surviving members of her family, and that she was not dependent for such necessities upon her deceased son.

4. Death—Evidence—Employers' Liability Act.—In the trial of such cases brought for the damages sustained by the infant daughter of the deceased it was error to permit the defendant to introduce as evidence a judgment of divorce obtained by the wife of deceased in which the latter was adjudged to pay $300.00 for the support of his infant child, as this is misleading, and can have no bearing upon the pecuniary benefits which the child had the right to expect from its father.

5. Death—Action for Death of Servant—Contributory Negligence.— It was error to submit to the jury the question of contributory negligence of the deceased, followed by a diminishing of the damages if the jury should find it to exist, when there was neither plea nor evidence of any such contributory negligence.

6. Death—Action for Death of Servant—Submission to Jury.—A dependent infant child has a right to expect pecuniary benefits from the continued life of its father, as he is under a legal obligation to supply its necessities during its minority, and it is error to submit to the jury the question as to whether such child had the right to expect such pecuniary benefits.

ROBERT HARDING, E. V. PURYEAR, JOHN W. RAWLINGS, STEPHENS & STEELY, JOHN W. SAMPSON and J. M. PERKINS for appellants.

EDWARD COLSTON, JOHN GALVIN, TYE, SILER & GATLIFF and H. M. CLINE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On November 14, 1913, Oscar Davis, who was then twenty-one years of age, was killed by the wrecking of a passenger train causing the engine to overturn and fall on him, producing instant death. The train was being

operated by the defendant, appellee, Cincinnati, New Orleans and Texas Pacific Railway Company, and the decedent was the fireman thereon. The accident occurred about three hundred yards north of a small town in Tennessee, called Annadell, and the wreck was produced by the engine in some way getting off the track and running off on the side of a dump, resulting in its being turned over, as stated. The train consisted of several passenger coaches and was a fast passenger train, known as the Royal Palm. It was going south at the time, which was between three and three-thirty in the afternoon of that day, and the derailment occurred about the middle of a cut through which the road ran on about a six-degree curve toward the east, and the proof shows the engine left the track from the east or inside rail of the curve.

I. W. Davis, father of the deceased, qualified as his administrator and filed this suit, which was brought under the Federal Employers' Liability Act, to recover the damages which the alleged dependents in the petition sustained on account of his decedent's death.

The negligence of the defendant, which, it is charged, produced the death, is stated to be the excessive and reckless rate of speed at which the train was running at that particular place (over a curve), and that the defendant had negligently permitted its track at that particular place to become greatly out of repair and dangerous for the purpose of operating trains over it. The negligence charged on this point is that the ties through the curve and at the point where the train jumped the track were so decayed that they did not hold the spikes fastening the rails of the track, and the latter were thereby permitted to spread or in some way cause the wheels of the engine to mount the rail, resulting in the wreck, followed by the death of the fireman.

It is alleged in the petition that the decedent left surviving him as dependents, and for whose benefit the suit was brought, an infant daughter, Ruth Davis, who was about three years old, and his mother, who at that time was a married woman, and whose husband was living, he being the appellant here, and she being the mother of several living children whose ages ranged from five years to twenty years, several of whom are employed in reasonably remunerative positions, the husband himself being employed at a salary of thirty dollars per month.

The answer is a traverse of the allegations of the petition, one paragraph of which pleads the pendency of a suit brought for the same cause of action, in the same court, by one Wheeler Chitwood as administratrix of the deceased; but after the filing of the answer that suit was dismissed as the controversy between the two personal representatives was finally determined in favor of the appellant herein. The petition prayed for the recovery of a judgment of $30,000.00, but upon trial the jury returned a verdict against the defendant for the sum of $2,000.00, from which the plaintiff prosecutes this appeal, and defendant has obtained in this court a cross-appeal.

The chief errors urged upon us on behalf of the appellant are: Incompetent evidence allowed to be introduced before the jury by the defendant over plaintiff's objections, and improper instructions to the jury likewise over his objections, and that the damages are inadequate under the proof.

The chief point raised by the cross-appeal is that there was not sufficient evidence to show the negligence on behalf of defendant complained of in the petition, and that its motion for a directed verdict should have prevailed. We will first consider the point raised by the cross-appeal.

Several witnesses who arrived at the scene of the wreck, within a very short time thereafter, stated that they observed the track, which was considerably torn up, and they noticed along through the cut quite a number of decayed and rotten ties; other witnesses testified that a short time before the wreck they had observed some of the ties along about where the train left the track, which was about the middle of the cut as well as the curve, and that they appeared to them to be in an unsound condition. It is shown by the track walker that he had on some occasions, the last of which was within a few days of the wreck, discovered that the spikes through the cut had, to some extent, become released and had pulled out from the ties something near a quarter of an inch, and that he at the time set the spikes, which means that he drove them up. It is shown, however, by this and other witnesses for the defendant, that around curves such consequences are liable to occur, even though the tie is in a perfectly safe and sound condition It is shown by the section foreman that within a week or

ten days previous to the wreck he had done some track work over this portion of the road, but that it did not consist in anything relating to ties—it was rounding up the bed of the track with either ballast or earth—but he says that on that occasion he did not observe any defective ties. It is furthermore shown by the witness that in July, 1912, he placed under the track through the cut 290 new ties, and that this was slightly more than one-half of the ties under the track covered by the distance of the cut and curve. It is not shown by him what particular part of the curve or track he placed these new ties, and he says he does not know how long the remaining ties which he did not remove had been in service. Practically the same testimony was given by the road-master, under whose charge was that particular part of defendant's road.

The defendant introduced no testimony as to the speed of the train at the time of the accident, but the plaintiff introduced two or three witnesses who gave it as their opinion that the train was running at a rate of speed between 75 and 80 miles an hour. It is shown that at this place the curve, while not of the sharpest character, is quite an abrupt one. While we have not gone into the details, what has been related is the substance of the testimony on these two vital issues.

Even if it be true that the evidence preponderates to the effect that there was no negligence shown as to the careless maintenance of the track at that place because of defective ties, still, under repeated rulings of this and other courts, there was sufficient evidence to submit this issue to the jury, and its verdict upon that issue is not so flagrantly against the evidence as to warrant us in setting aside the verdict on that ground.

In regard to the alleged reckless speed of the train, it may be stated generally that the only limitation imposed upon carriers as to the speed at which it may run its trains in rural territory is that it shall not be so great as to indicate great recklessness and an utter disregard of the safety of others, especially those upon the train. When an accident occurs at a time when the speed is of the character indicated, a jury would be well warranted in fastening upon the carrier the blame therefor. Whether there was such speed, and, if so, whether it contributed to produce the accident, are peculiarly questions for the jury, under appropriate instructions. We are

therefore convinced that the evidence on this issue of negligence was sufficient to authorize submission of the questions to the jury.

Considering the points urged for a reversal by the plaintiff in the order mentioned above, we find that the deceased, about two years before his death, had been divorced, by a decree of the Whitley Circuit Court, from his wife whose name previous to her marriage to the deceased was Wheeler Chitwood, and the divorce judgment restored her to that name. The parties lived together but a short while; after the separation there was born to the wife as a result of their marriage the female child, Ruth Davis, one of the dependents for whose benefit the suit is brought. By the judgment of divorce the wife was given the custody of the child, and the deceased, who was the defendant in that suit, was adjudged and ordered to pay his wife the sum of $300.00 in support of their infant child. This sum he was ordered to pay in installments of $25.00 every three months. There is nothing said in the judgment indicating that this is the only sum which he will ever be called upon to pay in support of his child, and it is a well known rule of law in this State that such judgments may be opened up at any time, by appropriate proceedings, and additional allowances made, if the proof on such proceedings justifies it. Moreover, the child was not a party to that proceeding and the judgment ordering the allowance is by no means binding on it. Notwithstanding these facts, the defendant was permitted to introduce the judgment and read it to the jury upon the trial, over the objections of the plaintiff. We think this serious error. As we shall hereafter see, the child, as a dependent upon its father, was entitled to recover the pecuniary benefits, which, as manifested by the proof, it had a right to expect from its father, who was under a legal obligation to support and supply it with necessities during its infancy, and these benefits cannot in the least be augmented or diminished by a judgment in a collateral proceeding to which the person entitled to them was in no sense a party. Whatever effect the judgment might have as between the husband and wife in regard to any sums which he might be adjudged to pay her, cannot affect the rights of the child which it may have in the continued life of its father. We therefore think that the objections of plaintiff, in this particular, are well taken.

Plaintiff's objections to the instructions are (a) that they refused to submit the right of the mother of deceased to recover; (b) that they submitted to the jury the question as to whether the defendant, as well as, deceased, was at the time engaged in interstate commerce; (c) that they submitted to the jury the issue of contributory negligence on behalf of deceased, with directions to diminish the damages if the jury should find such contributory negligence on his part, and, (d) that they submitted to the jury the question as to whether the daughter of deceased, Ruth Davis, was a dependent upon him and had a right to expect pecuniary assistance from him.

We have heretofore seen what the proof shows relative to the mother of the deceased. Aside from what we have already stated, it is shown that after the divorce the deceased carried his trunk to the home of his parents and made that his headquarters, but that he was not at home except at infrequent intervals, and would be there but a short while. However, upon occasions he would donate to his mother small sums according to the proof, which were trifling in amount, and all of which seems to have been the result of affection for his mother more than a recognition of any obligation to her in the way of support or maintenance. Besides, she was supplied with the necessities of life through the earnings of her other children and her husband to a degree much in advance of the average parent. But, aside from this, the act of Congress under which this suit is brought says:

"The action may be brought for the benefit of the surviving widow, or husband, and children of such employee, and *if none*, then of such employe's parents, and. if none, then the next of kin dependent upon such employe."

Mr. Thornton, in his work on the Federal Employers' Liability Act, on page 221, in discussing those for whose benefit the suit may be brought under the act, says:

"In case of the death of the injured employe, his personal representative brings the action for the benefit of those surviving him, and they are entitled to the proceeds of any judgment recovered, in the following order, viz.: First, the surviving widow or husband and children of the employe; second, if there be no widow, husband or *children*, then for the benefit of the employe's parents. . . . . If there be persons of the first class then

all the persons of the second and third classes are excluded."

This statement is fortified by federal opinions which we do not deem it necessary to discuss, because we are convinced, for two reasons, the mother of deceased is not entitled to recover anything in this case; they being that the proof fails to show any pecuniary expectations by her from her deceased son, and the other that the right of a parent under the act to recover for the death of a child is subordinated to the right of the widow or child of the person killed to recover for such death, *i. e.*, if there be a surviving widow or surviving child or children, the action shall be maintained exclusively for their benefit, and to the exclusion of the other classes of beneficiaries named therein.

Inasmuch as the pleadings admitted and the proof showed that the defendant was engaged in interstate commerce, and that the wrecked train upon which the deceased was employed was at that time making an interstate trip, we see no room for the submission of this question to the jury, although it was evidently harmless error.

There is absolutely no proof of any fact or circumstance looking to the establishment of any negligence on behalf of the deceased. If the train was running at an excessive and reckless rate of speed the jury might have erroneously concluded that inasmuch as the deceased was working with the engineer, and in a way assisting to propel the train, that he may have been somewhat to blame for this rate of speed. Such a conclusion would have been entirely unjustifiable from any fact proven by the testimony; but having had their attention called by the court to the contributory negligence of the deceased, the jury may have concluded that the court saw something in the evidence justifying the instruction; and, inasmuch as it allowed a diminishing of the damages, such effect may have been given to it. We are the more impressed with this possible consequence of the error in giving the instruction when we consider the size of the verdict returned. But, as there is to be another trial, we will not further comment upon this point, except to say that, under the circumstances, we think it was prejudicial error to have given any instruction on the question of contributory negligence, or to have allowed the jury the right to diminish the damages by reason thereof.

We do not see anything in the case of L. & N. Ry. Co. v. Massie's Admr., 138 Ky. 449, to which our attention is called, as militating against these views. The facts therein, under which the consequences of a submission to the jury of a false issue, were discussed, are entirely different from what they are here.

Complaint is made of the instruction because it made the right of the infant child of the deceased, Ruth Davis, to benefits, dependent upon whether "It had the right to expect any pecuniary assistance from him," and if the jury found that she had such right, then the amount of recovery should be measured by the jury, and they should return such a sum as it might believe "she had reasonable expectations of receiving from said Davis if his death had not been so occasioned." In other words, it is complained of this instruction that it submits to the jury the question as to whether Ruth Davis had the *right* to expect any pecuniary assistance from her father if he had lived, when, as a matter of fact, he was under legal obligations to support her at least until she became twenty-one years of age. The position is taken that as a matter of law she had a right to expect such pecuniary assistance. In this position we are inclined to agree, at least as to such assistance as the father might be financially able to render during the minority of his child. We do not think the court should have submitted the question as to whether Ruth Davis had the right to expect such pecuniary assistance; because, according to our view, the law gave to her that right, and imposed upon her father the duty to comply with it. However, we are convinced that the sum which the plaintiff was entitled to recover for her was properly limited to what "she had reasonable expectations of receiving from her father if his death had not been occasioned;" because the sum which she might have reasonably expected from him is largely dependent upon his earning capacity and consequent ability to supply the necessities of his daughter. What sum a child might be reasonably expected to receive in one case, under certain facts, would be entirely different in another case, under different facts, and so we think this statement in the instruction furnishes a proper criterion by which the jury should be guided in measuring the size of their verdict. The rule announced in the case of Gulf, Colorado. and Santa Fe Ry. Co. v. McGinnis, 228 U. S. 785, in no way militates against the position

we have assumed herein; in that case the decedent left, a widow and four children, one of whom was married and residing with her husband; there "was neither allega-tion nor evidence that such surviving child was either dependent upon or had any reasonable ground for ex-pecting, any pecuniary benefit from a continuance of de-cedent's life." The court, therefore, held that it was error to submit to the jury the right of such child to any recovery. The position of the child, Ruth Davis, in this record is entirely different. We think that the court should not have submitted to the jury the question as to whether the infant child had a right to expect pecuniary assistance from the continued life of her father for the reason stated.

In the instruction upon the measurement of damages the jury were told this:

"In fixing the amount of the loss of the infant Ruth Davis on account of the wrongful death of the said Oscar Davis, her father, if any, you may take into considera-tion the money value, if any, of that care, counsel, train-ing and education, if any, which the said Ruth Davis might reasonably have received from him, and which can only be supplied by the service of another for compen-sation, and of which she has been deprived by the wrong-ful death of her father, Oscar Davis, if any, and basing your finding, if any, only upon the evidence in this case."

It has been repeatedly held by the Supreme Court of the United States that the only item of loss to the persons for whom this character of action is brought that may be considered by the jury in rendering its verdict is "the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given." Gulf, Colo., and Santa Fe Ry. Co. v. McGinnis, 228 U. S. 785; Mich. Central R. R. Co. v. Vreeland, 227 U. S. 59; American R. R. Co. v. Didrickson, 227 U. S. 145; C. & O. Ry. Co. v. Kelly, ‑‑‑‑‑‑ U. S., page ‑‑‑ (decided June 5, 1916). Under this well-established rule, as laid down by the Supreme Court, it is manifest that no recovery can be had for the matters contained in the excerpt which we have made from the court's instruction given upon the trial, and upon another trial this portion of it should be eliminated, and the instructions made to conform to our views, as herein expressed.

For the reasons indicated, the judgment is reversed on the appeal, with directions to grant the plaintiff a new trial, and it is affirmed on the cross-appeal.