[Civ. No. 7894. First Appellate District, Division Two.—May 28, 1931.]

In the Matter of the Estate of WILLIAM T. McMURRAY, Deceased. ANNIE MONTGOMERY et al., Appellants, v. HELEN MARY McMURRAY ELMER, Respondent.

Harris & Hess, Annette Abbott Adams and W. S. Solari for Appellants.

William H. Schooler and P. M. Andrews for Respondent.

NOURSE, P. J.—Helen McMurray Elmer petitioned for distribution under section 1658 of the Code of Civil Procedure as the daughter and sole heir of decedent. Persons claiming to be a sister, a nephew and nieces petitioned for partial distribution. No evidence on their petitions appears in the record and no written objections to the daughter's petition were filed, but a full hearing was had upon the latter petition and the trial court found that petitioner was the daughter of William T. McMurray, and Lucille Mary McMurray, both of whom were dead, and that she was the sole heir and entitled to all the estate. The probate court also found that none of the other petitioners were entitled to any portion of the estate and then decreed that all the estate should be distributed to Helen McMurray Elmer. From this decree the other petitioners appeal upon typewritten transcripts.

In the final analysis the case is governed by questions of fact only. Helen McMurray Elmer was born July 21, 1904. Her parents were William T. McMurray and Lucille Mary McMurray, both deceased. In the year 1901 the parents met Henry and Marie Durnez in the city of Chicago

and represented themselves as husband and wife. The four traveled on the same train from Chicago to Denver, Colorado. There they separated, the Durnez family going to Leadville and later to Bucktown, Colorado, the McMurrays going to Cripple Creek. Mrs. Durnez and Mrs. McMurray frequently corresponded and about two years later the McMurrays visited at the Durnez home. During all this time they deported themselves as husband and wife and introduced themselves as such. In January, 1905, Mr. McMurray appeared at the Durnez home with a six-months' old child which he said was the daughter of himself and Lucille, which he asked Mrs. Durnez to take care of. He told Mrs. Durnez that his wife Lucille "was gone", giving her the impression that she was dead. He told her that the baby was named Helen and that she was born on July 21, 1904. He agreed to pay $25 a month for her care and then paid Mrs. Durnez $300 for the first year. Other payments were made from time to time, until July, 1907, when the Durnez family moved to Goldfield, Nevada, where McMurray was located. For a period of ten years father and daughter associated constantly in Goldfield, she staying in his home two or three days of each week. In 1917 McMurray took his daughter from Goldfield to Fallon, Nevada, thence to Reno, and thence to San Francisco, where she lived with him for three months. Later he took her back to the Durnez home, which was then in Clemenceau, Arizona. He continued to pay for her maintenance until her marriage to Cecil Elmer in April, 1923. In February, 1928, Helen Elmer, with her husband and two children, visited McMurray in San Francisco. He then told her that if she would pick out a home he would pay for it. She selected a home in San Diego upon which McMurray made the first payment and paid all installments up to the time of his death.

Appellants would not be satisfied with the foregoing as a complete story of petitioner's parentage because it appeared in the evidence that petitioner had not known that the decedent was her father until after his death and had, until her marriage in 1923, always used the name Helen Durnez. The petitioner might also ask to be added the fact that there were other children of the Durnez family and that no one of them was given any attention or financial support by decedent such as was given petitioner. On the whole, we

have stated the facts as they appeared to the probate court and any matters which would have served merely to cast a cloud upon the issues or to have supported a different finding may be disregarded on this appeal.

At the outset the appellants attack the decree because the court did not affirmatively find a legal solemnization of the marriage of William and Lucille McMurray. It was not necessary; first, because the legality of that marriage was not in issue, and, second, because its legality is presumed. The appellants did not controvert the allegation of the petition that respondent was the only child of decedent and Lucille Mary McMurray. The probate court found this allegation to be true upon evidence which was all one way. Hence, before the probate court there was no issue of the legality of the marriage of William and Lucille McMurray. Secondly, the evidence disclosing without any conflict that they deported themselves as husband and wife they are presumed to have entered into a lawful contract of marriage. (Code Civ. Proc., sec. 1963, subd. 30.)

On this appeal the appellants must concede the fact that petitioner is the daughter of decedent. Their attack on the decree is merely a suggestion that there may be some doubt as to the child's legitimacy. They are not permitted to urge this point. Section 195, of the Civil Code declares that the presumption of legitimacy can be disputed only by "the husband or wife, or the descendant of one or both of them". The appellants do not come within any of these classes. As we have said heretofore the appellants did not file written objections to respondent's petition. On this appeal they rely upon the allegations of their petition for distribution. But in that petition they merely allege a relationship—not a legal marriage nor a legitimate birth. Thus the appellants are in the peculiar position of attacking the decree because the respondent did not go beyond what is customary in such cases and prove by *direct* evidence that her father and mother were married by due solemnization and that she was the legitimate issue of that marriage, yet the allegations of appellants' petitions are precisely the same as those of the respondent and the appellants failed to prove that any one of them was the legitimate issue of a lawful marriage. Hence, for the same reasons they urge against the decree, they should be foreclosed from attacking it.

■ However, the presumption of legitimacy can be overcome only by clear and satisfactory proof. (*Estate of Walker*, 180 Cal. 478, 493 [181 Pac. 792].) Here there is no proof tending to rebut the presumption. Aside from their cross-examination of respondent's witnesses on the single issue whether respondent was the daughter of decedent, the appellants produced evidence tending to show that the respondent used the name Helen Durnez—a fact which was freely admitted. They also filed two affidavits concerning their relationship to the deceased. At what stage of the proceedings these affidavits were offered in evidence does not appear, nor is it clear for what purpose they were offered and received, nor what evidentiary value can be given them (unless they were offered to prove the ''identity'' of the parties within the terms of section 1379 of the Code of Civil Procedure, because they were not admissible as evidence under section 2009, this being a contested proceeding). If, as stated in appellants' brief, other evidence was offered which was not reported and which is not in the record, we may not consider it. So far as appears from the record before us there is nothing in the pleadings or in the evidence which would have apprised the respondent that an attack was being made upon her legitimacy.

In support of the decree the respondent has evidence that her parents held themselves out as husband and wife, and the presumption from this that they were lawfully married; the evidence that she was born in lawful wedlock, and the presumption from this that she was legitimate. If the appellants desired to combat this evidence they should have joined issue in the probate court.

We find no error in the record and the decree is accordingly affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 24, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 27, 1931.