[S. F. No. 17938. In Bank. Feb. 21, 1950.]

KENNETH DAVID GONZALES, a Minor, etc., Appellant,
v. PACIFIC GREYHOUND LINES (a Corporation)
et al., Respondents.

750

Robert G. Partridge, Noland & Lawson and Wallace O'Connell for Appellant.

Hoge, Pelton & Gunther, Leo V. Killion and Reginald M. Watt for Respondents.

SPENCE, J.—This is an action for damages for the wrongful death of Ralph Daniel Gonzales. It was originally commenced by Jeraldine Gonzales, as surviving widow, and Kenneth David Gonzales, a minor, claiming to be the son of the decedent. William Gonzales, admittedly the son of the decedent by a previous marriage, was permitted to intervene in the action. The decedent was killed on February 11, 1946, when his taxicab crashed into a Greyhound bus that had skidded out of control and was blocking the highway a short distance above a sharp turn around which the decedent, coming from the opposite direction, traveled to the point of impact.

The action has been twice tried. On the first trial, which was before the court without a jury, the defendants stipulated as to liability for the accident, leaving for determination only the issues of heirship and the amount of damages. By the judgment entered at the conclusion of that trial, the widow was awarded funeral expenses and William Gonzales recovered the sum of $1,800, but Kenneth David Gonzales was allowed nothing, the court finding that he was not the child of the decedent. Plaintiff Kenneth David Gonzales thereupon moved for a new trial, and it was granted upon the court's statement that "the evidence [was] insufficient to justify" its finding in negation of plaintiff's paternity claim since section 195 of the Civil Code provides that "the presumption of legitimacy of children born in wedlock can only be disputed by the husband or wife or descendant of one or both of them and the Pacific Greyhound Lines is not in that class."

The second trial, which was confined solely to the rights of plaintiff Kenneth David Gonzales, was had before a jury. The trial court, over plaintiff's objection, permitted defendants to introduce evidence in challenge of his legitimacy, and it refused plaintiff's offer of defendants' stipulation on the first trial in admission of their liability for the accident. The jury returned a verdict in favor of defendants. From the judgment accordingly entered, plaintiff appeals, contending that the said two major rulings of the trial court were prejudicially erroneous. His position is well taken on both points in the light of the record and the law applicable thereto.

Plaintiff presented evidence which entitled him to claim the presumptions of legitimacy as controlling in his favor. Thus it was indisputably established that Jeraldine Gonzales and the decedent were married on December 11, 1942; that plaintiff was born on August 2, 1943; that the dece-

dent was not impotent; and that the decedent and Jeraldine Gonzales had lived together as husband and wife from the date of their marriage up to several months after the birth of plaintiff. Accordingly, it becomes immaterial whether the presumption of plaintiff's legitimacy be considered conclusive (Code Civ. Proc., § 1962, subd. 5) or disputable (Code Civ. Proc., § 1963, subd. 31; see, also, Civ. Code, § 193), for defendants would not be in a position to argue the point.

▪ Even where the presumption of legitimacy is a disputable one, challenge can be made "only by the husband or wife, or the descendant of one or both of them." (Civ. Code, § 195.) By reason of this statutory limitation, the following persons have been barred from questioning the legitimacy of a child born in wedlock: the state in a criminal prosecution for nonsupport of an alleged illegitimate child (*In re Madalina,* 174 Cal. 693, 695-696 [164 P. 348, 1 A.L.R. 1629]); the beneficiaries named by the will of the deceased husband, bearing no relation to the testator but opposing the claim of his alleged daughter as a pretermitted heir (*Estate of Lee,* 200 Cal. 310, 314 [253 P. 145]); collateral heirs of the decedent contesting distribution of the estate to his daughter as sole heir (*Estate of McMurray,* 114 Cal.App. 439, 442 [300 P. 72]); the unmarried father seeking determination of the parentage of the child born to the mother while married (*Serway* v. *Galentine,* 75 Cal.App.2d 86, 89 [170 P.2d 32]). Likewise here, defendants are not within the class enumerated in the statute and so are foreclosed from inquiry as to plaintiff's legitimacy. As was said in *In re Madalina, supra,* at page 696: "This is the declared policy of this state, and is simply the adoption of a rule prevailing generally in all civilized communities."

The record reveals that the trial court, despite the provisions of section 195 of the Civil Code, deemed that the nature of defendants' controverting evidence, as embraced in an interlocutory decree of divorce between the decedent and Jeraldine Gonzales, made it proper for defendants to contest plaintiff's legitimacy. That litigation, as it herein appears, may be summarized as follows: In 1944 the parties in their respective divorce pleadings each alleged that plaintiff was the issue of their marriage. Apparently the action was uncontested and the divorce was awarded to the wife on the ground of extreme cruelty. At the hearing she testified that the decedent was not the father of plaintiff, and the trial court, upon so finding in pursuance of her testimony, included in the interlocutory decree a provision awarding plaintiff's custody to her and

reciting that the decedent should not be required to contribute to plaintiff's support. No final decree was ever entered, the wife, Jeraldine Gonzales, explaining that several reconciliations undertaken with the decedent were followed by successive separations, and adding that up to the time of his death he contributed intermittently to plaintiff's support. She also stated on both the first and second trials of this action that her testimony in the divorce proceedings with respect to the paternity issue affecting the status of the child was false and was given because she feared that otherwise the trial court might award the custody of plaintiff to the decedent. At the time of the divorce proceedings, she was but 17 years of age.

While the interlocutory decree stood as a final adjudication between the husband and the wife on the issues there submitted (*Leupe* v. *Leupe,* 21 Cal.2d 145, 148 [130 P.2d 697]; *Borg* v. *Borg,* 25 Cal.App.2d 25, 29 [76 P.2d 218]; *Estate of Hughes,* 80 Cal.App.2d 550, 555 [182 P.2d 253]), plaintiff was not a party to that litigation and he was not bound by the determination of his status therein. (*Estate of Walker,* 176 Cal. 402, 412 [168 P. 689].) The absence of a support order in the divorce decree stemmed wholly from a finding of nonpaternity, and there would have been no legal basis for holding the husband liable in that action for the child's support. Such decree would in nowise be material here on the issue of plaintiff's right to recover for the pecuniary loss he claims to have sustained as the result of the decedent's death. (See *Davis' Administrator* v. *Cincinnati, New Orleans & Texas Pacific Railway Co.,* 172 Ky. 55 [188 S.W. 1061, 1063, Ann.Cas. 1918E 414]; note, Ann.Cas. 1918E p. 419.) Accordingly, the interlocutory decree of divorce was not admissible for any purpose in this action—in challenge either of plaintiff's relationship to the deceased or of his right to recover damages consistent with his heirship claim herein.

Moreover, the trial court's instructions served to accentuate its error with regard to the relevancy of the divorce proceedings. Without detailing the instructions on the point, it is sufficient to state that they reflect the trial court's view that plaintiff's paternity claim was an open, controvertible issue for the jury's determination from the evidence as above outlined. But since defendants were precluded, under the circumstances shown by the uncontradicted evidence, from challenging plaintiff's legitimacy, and as to them, he was in legal effect conclusively presumed to be legitimate, plaintiff was entitled

to an instruction plainly stating that fact to the jury in support of his heirship claim in this action. The trial court's failure to so charge constituted error of a most prejudicial nature.

In line with these observations, there remains one further point to be noted. During the second trial of this case, plaintiff's mother was subjected to interrogation by defendants' counsel relative to statements that she had made in the divorce proceedings concerning the legitimacy of plaintiff. Such line of inquiry proceeded upon the theory that it constituted impeachment of her testimony in this action in support of plaintiff's heirship claim as the legitimate child of the deceased. However, impeachment of a witness must be confined to material points and cannot be directed to collateral matters. (27 Cal.Jur. § 125, p. 152; *Estate of Gird*, 157 Cal. 534, 548 [108 P. 499, 137 Am.St.Rep. 131] ; *People* v. *Pianezzi*, 42 Cal.App.2d 270, 278 [108 P.2d 685].) Since defendants were precluded here from raising the issue of plaintiff's legitimacy, any attempt to impeach plaintiff's mother on the basis of prior inconsistent statements made by her with respect to plaintiff's status would be wholly immaterial and irrelevant to the determination of plaintiff's right of recovery and would allow defendants, under the guise of attacking her credibility, to present collateral matter to the jury which could operate only to plaintiff's serious prejudice. In such circumstances the cross-examination of plaintiff's mother as undertaken by defendants' counsel exceeded proper limits, and plaintiff's objection thereto should have been sustained.

Likewise available to plaintiff as ground for reversal of the judgment herein is the trial court's refusal to admit into evidence the stipulation as to liability made by defendants on the first trial. Pertinent to this point is the following excerpt from those proceedings as contained in the present record: "Mr. Noland [counsel for plaintiff] : I have been advised—I think I am correct that you stipulate to liability? Mr. Hoge [counsel for defendants] : Yes, as to the facts surrounding the happening of the accident."

In chambers and before the taking of any testimony on this second trial, plaintiff's counsel offered in evidence this admission of liability and claimed the benefit thereof in disposition of that issue. The record of the first trial as to this agreement between counsel dispensing with proof of the admitted fact shows that it was made without limitation. On the second trial defendants made no application for relief from the effect

of their stipulation nor showed any cause for such consideration. Rather defendants' counsel simply asserted a change of position and objected to the competency of the stipulation as evidence, upon the theory that it had no binding force beyond the first trial. With this proposition the trial court agreed and so ruled in the defendants' favor.

 It is the general rule that where a stipulation is distinctly and formally made for the express purpose of relieving the opposing party from proving some fact, and no provision is made by its terms indicating a limitation of scope or the duration of its effect, that admission can be introduced in evidence and is available upon a subsequent trial of the same action, unless the court permits its withdrawal upon proper application therefor. (Wigmore on Evidence, 3d ed., vol. IX, § 2593, p. 593; see anno. 100 A.L.R. 775; *Nathan* v. *Dierssen*, 146 Cal. 63, 65-66 [79 P. 739] ; *Andrew* v. *Bankers & Shippers Ins. Co.*, 125 Cal.App. 24, 27-28 [13 P.2d 515] ; *Crenshaw* v. *Smith*, 74 Cal.App.2d 255, 267 [169 P.2d 752].) For an effective discussion and review of the law on this subject as it prevails in this state, it will suffice to refer to the recent case of *Richfield Oil Corp.* v. *State Board of Equalization*, 329 U.S. 69 [67 S.Ct. 156, 91 L.Ed. 80], where in footnote 1, page 73, the following observations are made: "In California a valid stipulation is binding upon the parties. *McGuire* v. *Baird*, 9 Cal.2d 353, 70 P.2d 915; *Webster* v. *Webster*, 216 Cal. 485, 14 P.2d 522; see 23 Cal.Juris. 826. It is available at a second trial unless in terms otherwise limited, *Nathan* v. *Dierssen*, 146 Cal. 63, 79 P. 739; *Crenshaw* v. *Smith*, 74 A.C.A. 295 [74 Cal.App.2d 255], 168 P.2d 752; see 100 A.L.R. 775, and will be controlling at the second trial unless the trial court relieves a party from the stipulation. *First National Bank* v. *Stansbury*, 118 Cal.App. 80, 5 P.2d 13. Relief from a stipulation may be granted in the sound discretion of the trial court in cases where the facts stipulated have changed, there is fraud, mistake of fact, or other special circumstance rendering it unjust to enforce the stipulation. *Sacre* v. *Chalupnik*, 188 Cal. 386, 205 P. 449; *Back* v. *Farnsworth*, 25 Cal.App.2d 212, 77 P.2d 295; *Sinnock* v. *Young*, 61 Cal.App.2d 130, 142 P.2d 85; see 161 A.L.R. 1163. In the present case there is no intimation in the record or briefs of fraud, excusable neglect, or other ground for relief."

 While as noted in the above quotation, relief from an unqualified stipulation of facts may be had in a proper case,

defendants' objection here to the admission of their previous stipulation on the liability issue was not, in terms or effect, an application to be relieved therefrom through the exercise of judicial discretion by the trial court, but was an unconditional challenge to its competency and binding force in subsequent litigation. The trial court ruled in accordance with defendants' theory as to the legal effect of the stipulation and rejected it as competent evidence on the second trial. Since defendants' argument as made in no manner invoked the discretion and powers of the trial court on the subject of their right to withdraw from the stipulation admittedly made on the first trial, the decision on the point here cannot be correlated with those considerations as a factor of support. Nor does it matter whether or not defendants' counsel, in discussing with plaintiff's counsel the issues to be contested on the second trial, stated that "we [are] not going to admit liability," for the mere notice of a change of position would not affect the binding character of the stipulation by reason of its unlimited terms, in the absence of an order of the trial court procured in an affirmative application for such relief upon a showing of circumstances constituting cause therefor. (*Herbst* v. *Vacuum Oil Co.*, 22 N.Y.S. 807, 808.) As the record here stands, the conclusion is inescapable that the trial court, in denying the reception in evidence and the controlling effect of the stipulation on the issue of liability, committed error prejudicial to plaintiff.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied March 20, 1950.