SHEWALTER, Respondent, vs. SHEWALTER, Appellant: SHEWALTER, by Guardian *ad litem,* Impleaded Defendant.*

*October 9—November 6, 1951.*

* Motion for rehearing denied, with $25 costs, on January 8, 1952.

For the appellant there was a brief by *Bassuener, Humke, Poole & Axel* of Sheboygan, and oral argument by *H. S. Humke.*

For the respondent there was a brief by *Evrard, Evrard, Duffy, Holman & Faulds,* attorneys, and *E. L. Everson* of counsel, all of Green Bay, and oral argument by *Mr. Everson.*

*Frank P. Cornelisen* of Green Bay, guardian *ad litem,* for the impleaded defendant Linda Katherine Shewalter.

BROADFOOT, J.   The parties, residents of Green Bay, were married in California on April 13, 1944, while the defendant was in military service. The parties returned to Green Bay in July, 1944, when the defendant had a furlough. The defendant left the plaintiff in Green Bay on July 28, 1944, and returned to his military duties in California. At that time the plaintiff was pregnant. On August 2, 1944, the plaintiff suffered a miscarriage. She returned to California, arriving there on October 3, 1944. From that date until December 28, 1944, the parties lived together as husband and wife in California. On the latter date the defendant left for a camp

in Washington and the plaintiff returned to Green Bay. The child, Linda Katherine Shewalter, was born on June 2, 1945.

The defendant's first contention is that the evidence does not sustain the court's finding of condonation. On the question of condonation the plaintiff testified that the parties saw each other upon many occasions, starting with the night the answer and counterclaim were served (May 6, 1946) and continuing to the date of the first trial (May 5, 1947), and that they had sexual relations on numerous occasions. Her testimony as to meeting the defendant was corroborated by other witnesses. The defendant admits that from December, 1946, until the date of the first trial he was with the plaintiff on approximately forty to fifty occasions. He admitted that they made trips to Manitowoc, Sturgeon Bay, and other places, but denied having intercourse with the plaintiff after the commencement of the action. He stated that the purpose of his meeting with the plaintiff was to gather information from her as to the paternity of the child.

The credibility of the witnesses was a matter for the trial court, and its finding upon the question of condonation is not contrary to the great weight and clear preponderance of the evidence, and must be sustained.

The defendant next contends that the evidence does not sustain the court's finding that the impleaded defendant, Linda Katherine Shewalter, is the lawful, legitimate issue of the parties. Each of the parties offered the testimony of a reputable doctor who testified in answer to hypothetical questions. The medical expert of the defendant was a general practitioner with considerable experience in obstetrics. The medical expert of the plaintiff was a professor of gynecology and obstetrics at Marquette University, who was a specialist in his subjects and had supervised the delivery of some five thousand children. The hospital records as to the mother and daughter at the time of the birth of the child were placed in evidence and the facts shown thereon were incorporated in

the hypothetical questions answered by the doctors. These records showed the child to be a normal, mature infant.

Based on the facts contained in the hypothetical question the defendant's medical expert testified that it was his opinion that the child was conceived prior to October 3, 1944, and placed the date of conception as September 10 to September 12, 1944. The plaintiff's medical expert, upon similar hypothetical facts, testified to a reasonable medical certainty that the child born June 2, 1945, could have been conceived on or subsequent to October 3, 1944, and that a two hundred forty-three day gestation period resulting in a normal, full-term baby is within the field of medical probability. Each expert supported his answers to the hypothetical questions with technical medical testimony.

The plaintiff introduced an exhibit indicating that the blood types of the child and the defendant were consistent with parenthood. This blood test was made by a reputable Green Bay physician. In addition the trial court arranged, by an order dated April 13, 1950, to have the blood of the defendant and the impleaded defendant tested as to blood types by a reputable physician at Milwaukee, Wisconsin. The procedure followed under the order was that outlined by sec. 166.105, Stats., and the report of the Milwaukee physician followed the language of that statute and stated: "On the basis of these tests, Kenneth Howard Shewalter cannot be excluded as a parent."

Sec. 328.39, Stats., reads in part as follows:

"(1) Whenever it is established in an action or proceeding that a child was born to a woman while she was the lawful wife of a specified man, any party asserting the illegitimacy of the child in such action or proceeding shall have the burden of proving beyond all reasonable doubt that the husband was not the father of the child. In all such actions or proceedings the husband and the wife are competent to testify as witnesses to the facts. The court or judge shall in such cases order the child made a party and shall appoint a guardian

*ad litem* to appear for and represent the child whose paternity is questioned. In divorce and separation actions, in which the question of illegitimacy is raised, and in illegitimacy proceedings, the court being satisfied that the parties to the action are unable to adequately compensate the guardian *ad litem* for his services and expenses, the court shall then make an order specifying the guardian's fee and expenses, which fee and expenses shall be paid as provided in section 357.26."

Under this provision the defendant had the burden of proving beyond all reasonable doubt that he was not the father of the child. The court determined, after weighing the testimony in the case, that the defendant had not met the burden of proof required by that section. Its finding "that said child, Linda Katherine Shewalter, is the lawful and legitimate issue of the marriage of the parties" must be sustained upon the record in this case.

The guardian *ad litem* was appointed pursuant to the provisions of sec. 328.39 (1), Stats., which is quoted above. Under that section the court made an order specifying the guardian *ad litem* fees and expenses, found that the parties to the action were unable to adequately compensate him, and directed that the fees be paid by Brown county. The defendant challenges the amount allowed to the guardian *ad litem* for his services because the amount exceeds the rate provided by sec. 357.26. He does not challenge the amount allowed as being unreasonable. The language of sec. 328.39 merely states that the fee and expenses of the guardian *ad litem* shall be paid "as provided in section 357.26"—that is, by the county. There is nothing in the language of the section to indicate that the legislature intended that the schedule of fees set out in sec. 357.26 should be used or applied by the court in making its order specifying the guardian *ad litem's* fees and expenses.

*By the Court.*—Judgment affirmed.