**STATE of Oklahoma ex rel. Carnie A. EVERTSON, Petitioner,**

v.

**J. C. CORNETT, Judge of the District Court of Osage County, Oklahoma, Respondent.**

**No. 40854.**

Supreme Court of Oklahoma.

April 7, 1964.

Charles R. Gray, W. N. Palmer, Pawhuska, for petitioner.

Fred A. Tillman, Don Hampton, Pawhuska, for respondent.

JACKSON, Justice.

This original action for writ of mandamus presents a question of first impression

in this state as to whether a trial court in a divorce proceeding has judicial power to order blood tests for a child whose paternity is questioned.

It arose out of a case in which the wife sued the husband for divorce. The petition alleged, among other things, that the parties had been married since 1951 and that one child had been born of the marriage. This child was about 8 months old when the petition was filed in July, 1963. The wife prayed for a divorce, alimony, the custody of the child and child support money. The answer of the defendant husband admitted the marriage but denied that he was the father of the child; he also filed a cross petition in which he asked for a divorce.

Thereafter the husband filed a "Motion to Require Blood Test" in which he recited, in effect, that the child had been born in lawful wedlock, but that he was not the father; that under such circumstances there is a strong presumption of law that the child is the legitimate child of the husband and wife, and that strong and convincing evidence is necessary to overcome this presumption of legitimacy. He alleged that such evidence could be obtained through blood grouping tests and that "it has now been scientifically determined that it can be established by blood tests of the child, the mother, and the alleged father, that the alleged father is *not* the father of the child; that such scientific proof is certain, positive and conclusive" (emphasis supplied). He offered to submit to such a test himself and asked the court to order the wife to submit herself and the child to the tests, at the hands of a qualified expert to be appointed by the court, such test to be made "in the presence of the plaintiff and defendant or their authorized representatives".

At the hearing on this motion, defendant husband offered the deposition of Dr. C., whose qualifications as a clinical pathologist and hematologist are unquestioned. He testified in substance that from the medical standpoint, when an "incompatibility" between the blood types of the child and alleged father is revealed by a battery of commonly used tests, involving several different systems of blood groupings, the *non*-paternity of the alleged father is "definitely, conclusively" established. He also said that the fact of paternity could not be proved by the tests.

The husband also testified, and offered to submit himself to the tests. Other evidence was to the effect that the wife had been requested to submit herself and the child to the tests, and had refused. The wife (mother) testified that she and her husband were married in 1951 and had been living together as husband and wife continuously from then, up until the time she filed her divorce action in July, 1963. She specifically testified that the defendant husband was the father of her child and that she had not had sexual connection with any other man.

At the conclusion of the hearing, the trial judge took the matter under advisement. It is fair to say that his remarks at that time indicate that he has confidence in the scientific accuracy of the tests and feels that evidence of their results could be probative evidence in the case; he said that he hoped the parties would submit to them voluntarily and that such would be "a great benefit to the court".

He entered an interlocutory order at that time reciting the appearances of the parties and the taking of evidence and ordering that "the matter be taken under advisement by the court until the 31st day of December, 1963, at which time a decision is to be announced".

The order then concluded with the following paragraph:

"It was the further suggestion of the court that the plaintiff submit herself and the child for said blood test examination and that she express her willingness to do so within five days * * *."

Thereafter, on Dec. 31, 1963, the court entered an order requiring the wife to sub-

mit to the blood test, but finding that "the court does not have judicial power to require the plaintiff, Mary L. Evertson, to submit the child, April Dawn Evertson, for the making of such blood grouping test".

Defendant husband now asks this court to assume original jurisdiction for the purpose of granting a writ of mandamus to compel the trial court to order blood tests of the child made.

At the outset it should be noted that a host of related but not particularly pertinent questions present themselves. We are not concerned at this time with whether, after properly administered blood tests, a medical finding of nonpaternity would be conclusive on that question, or merely probative evidence to that effect. Although the wife, in her pleadings and briefs in this court, poses various questions as to the constitutional rights of the child, they are not seriously argued or supported by authority, and we will consider them only briefly.

■■ Requiring the child to submit to a blood test would not be a violation of her rights under the Fifth Amendment to the United States Constitution and Article 2, Section 21 of the Oklahoma Constitution, concerning self-incrimination. These constitutional provisions prevent persons from being required to give testimony which might tend to show them guilty of a crime (58 Am.Jur. Witnesses, Sec. 45) unless immunity from prosecution is extended under Article 2, Sec. 27, Oklahoma Constitution. At the worst, a blood test of the child might tend to show that she is illegitimate, and it is perhaps unnecessary to point out that it is not a crime to be an illegitimate child.

■ Neither would a blood test of the child constitute a violation of the due process clause of the Fourteenth Amendment to the United States Constitution, or the so-called constitutional "right of privacy". For an annotation on the constitutional aspects of the use of blood tests as evidence, see 46 A.L.R.2d, pages 1013 through 1017.

The briefs of the parties in this court discuss two general questions: whether mandamus will lie in this case, and whether the trial court did have judicial power to order the blood grouping test for the child. We will consider those questions in the order listed.

The position of the wife with regard to the propriety of the writ of mandamus is simply that, even if the court does have power to order the test, his refusal to do so was merely an act within the discretion of the trial court, and that there was no such an abuse of discretion as to justify this court in issuing a writ of mandamus.

We do not agree that *in this case* the action of the trial court in refusing to order the blood grouping test was not an abuse of discretion.

■ We are aware of the general rule that while a writ of mandamus will issue to compel an inferior tribunal to exercise its legal discretion, it will not issue to compel the exercise of the discretion in a particular way. 35 Am.Jur. Mandamus, Sections 254 and 258. In this case, however, there was a full and complete hearing upon the motion, at which all interested parties had an opportunity to, and did, present evidence and make arguments. The complete record of that hearing is now before us, and in view of our conclusions on the second question, hereinafter, the *action* of the trial court, regardless of the reason behind it, amounts to a denial of a clear legal right of the defendant husband.

In 35 Am.Jur. Mandamus, Sec. 259, it is said:

"The rule denying mandamus with respect to judicial duties of a discretionary character is not without limitation. If the *action* of the court or judge in a matter calling for the exercise of discretion is such as to amount to an abuse of discretion * * * and it appears that there is no remedy by appeal or error, or that such remedy, if existing, is entirely inadequate, and the exigency is such as to justify the interposition of the extraordinary superintending power of the higher

court, mandamus will issue to *compel the specific action which should have been taken.* Thus, the lower court or judge *may be compelled to act in a particular way when the facts are not in dispute and the court has come to a wrong conclusion of law therefrom * * *."* (Emphasis supplied.)

■ In this case, the expert evidence produced by defendant husband at the hearing on the motion was undisputed. It establishes conclusively that blood grouping tests are accurate from the scientific standpoint, and that if the tests reveal an "incompatibility" between the blood types of the child and the alleged father, evidence of the results of the tests would constitute probative evidence, under the pleading in this case, of a very strong and objective character. The accuracy of the tests (to prove nonpaternity) is not questioned by the wife in any way in her pleadings, evidence or briefs.

■ Under the circumstances existing in this case, we conclude that it is the action actually taken by the trial court, and not merely the reason behind it, which should determine whether or not mandamus will lie. Here, the husband has admitted the marriage and that the parties were living together as husband and wife during the period of probable conception; he has not pleaded nonaccess to the wife and has not pleaded that he is impotent; nevertheless, in his verified pleadings he has alleged in plain and unequivocal terms that he is not the father of the child. In this state of the pleadings, and in view of the strong presumption of law regarding the legitimacy of a child born in lawful wedlock, it may be said as a practical matter that the only evidence that could possibly establish that he is not the father is the evidence he seeks in his "Motion to Require Blood Tests". The action of the trial court has effectively denied him the right to procure and introduce that evidence; in practical effect, and under the issues raised by the pleadings and testimony in support thereof, the court has denied him the right to

produce any evidence at all. Such being the case, the result of the trial below would be a foregone conclusion, and it would be idle and futile to require the defendant husband to submit to such a trial and then appeal to this court before being permitted to procure and produce the evidence he seeks. The remedy by appeal therefore cannot be said to be adequate, and we hold that mandamus will lie.

■ On the second question, the wife argues that the trial court is without power to order the blood test for the child because, in this case, no guardian ad litem has been appointed, and the child has not been made a formal party plaintiff or defendant in the suit. She says that the child must be a party to the action before the trial court can have power to order the blood test.

She cites 12 O.S.1961 §§ 228, 229, 231 and 236; and certain language from the body of the opinion in Allen v. Hickman, Okl., 383 P.2d 676.

The sections of the statute cited concern the defense of an infant by a "guardian for the suit", the appointment of a guardian ad litem, the joinder of parties defendant, and the power of the court to determine who are necessary parties, and to order them brought into the suit. The language from Allen v. Hickman, supra, concerns the necessity for the appointment of a guardian ad litem for an infant defendant.

These citations are not helpful to the wife's argument, because, as used by her, they *assume* that the child is a necessary party, and these citations do not help to prove whether she is or not. The wife says that with the husband's denial of the paternity of the child, a new issue (the child's legitimacy) arose which makes the joinder of the child as a party to the action necessary. She says this is true because the child has a greater and more personal interest in the question of legitimacy than in the question of whether the husband shall support the child in this case.

It may be conceded, for purposes of argument, that the question of legitimacy is

a new issue in the case; but it is an issue of *fact,* and the issue of law remains the same: whether the husband in this case shall be required to support the child, and, if so, how much he shall contribute for that purpose. The child's greater and more personal interest in the question of legitimacy does not, alone, make her a necessary party to this action.

In at least one jurisdiction (Wisconsin) there is a statute specifically requiring the trial court to make a child a party to the action and appoint a guardian ad litem to represent him, in divorce cases where the child's paternity is questioned. Shewalter v. Shewalter, 259 Wis. 636, 49 N.W.2d 727. Oklahoma has no such statute. In an annotation in 65 A.L.R.2d at page 1393, it is said:

"But the widespread practice in other jurisdictions is to litigate the question of paternity without the appointment of a guardian ad litem. One reason for this practice is that, in so far as support for the child is concerned, it is paid to the wife, and she ordinarily has such an interest in the question as to ensure that it will be adequately presented to the court. Again, if the child is not a party to the action he is not bound by the adjudication concerning paternity, so that there is little point in appointing a guardian ad litem for him."

The rule that the child is not bound by a finding of nonpaternity in a divorce case is supported by the weight of authority. Shatford v. Shatford, 214 Ark. 612, 217 S.W.2d 917; Daniels v. Daniels, 143 Cal. App.2d 430, 300 P.2d 355; Gonzales v. Pacific Greyhound Lines, 34 Cal.2d 749, 214 P.2d 809.

We hold that a child whose paternity is questioned in a divorce action is not a necessary party to the action, and that the joinder of such child as a party is not a pre-requisite to the ordering of blood tests for the child. It follows that the fact that the child was not a party to this action, and that no guardian ad litem had been appointed for her, is no bar to the "judicial power" of the court to order a blood test.

In her briefs and argument, the wife tacitly concedes that properly administered blood tests are valid from the scientific standpoint for the purpose of helping to prove nonpaternity. In this connection, see annotation at 46 A.L.R.2d 1000. At page 1004 of that annotation, it is said, on another pertinent point:

"The later cases have recognized the inherent power of the courts to issue, in their discretion, orders for blood tests in appropriate cases * * *."

And at page 1005 it is said:

"The later cases which have involved the question whether, in the absence of any specific statute authorizing the ordering of blood grouping tests, a court has power to issue an order of this king, support the propositions, first, that such power exists, and secondly, that whether the power is to be exercised in a particular case rests in the discretion of the court. * * *"

■ In accordance with the weight of authority, we hold that in a divorce case in which the paternity of the child is questioned, the court does have judicial power to order blood grouping tests of the child concerned.

The cases cited by the wife are not helpful to her. Dale v. Buckingham, 241 Iowa 40, 40 N.W.2d 45, was a case in which the trial court, in his discretion, refused to order the taking of blood tests in a disputed paternity case. The appellate court held in effect that the trial court did not abuse its discretion in refusing to order blood tests where, although the case had been at issue for six months, no request for such tests was made until 3 hours before trial time, and there was no showing as to the validity of the tests. Of course those are not the facts in the situation now before us.

A second case cited by the wife is State ex rel. Wallock v. Brigham, S.D., 33 N.W. 2d 285. In that case a wife attempted to

use blood grouping tests to judicially establish that a man other than her husband was the father of her child. The trial court, apparently without the benefit of expert testimony on the subject, appears to have thought that blood tests could establish *paternity* (as opposed to nonpaternity). In holding that in that case the ordering of blood tests was error, the South Dakota court pointed out that in State v. Damm, 64 S.D. 309, 266 N.W. 667, it had held that the ordering of a blood test was within the discretion of the trial court in disputed paternity cases at the instance of a party seeking to prove *non*paternity.

The third case cited by the wife is Bednarik v. Bednarik, 18 N.J.Misc. 633, 16 A.2d 80, a 1940 case in which the New Jersey appellate court in effect refused to approve the use of evidence as to blood tests in disputed paternity cases. It is perhaps pertinent to point out that the use of evidence as to blood tests was less common in 1940 than it is now, and there may have been some reason to question their scientific accuracy at that time. However, it should be noted that in Anthony v. Anthony, 9 N.J.Super. 411, 74 A.2d 919, the rule stated in the Bednarik case was criticized, and in the 1950 case of Cortese v. Cortese, 10 N.J. Super. 152, 76 A.2d 717, the New Jersey court announced a contrary rule and held that it was error to deny a litigant an order for a blood grouping test "[i]n the light of the wide acceptance of the value of the tests".

It is argued by the wife, and not denied by the husband, that the court's oral remarks from the bench (not contained in the record before us) on the occasion of refusing to order a blood test for the child, indicate that he felt that if he ordered the tests, the court would be assuming the role of an advocate for the movant and cease to be an impartial tribunal. Assuming that the wife has correctly construed the court's remarks, we do not agree that the impartiality of the trial tribunal would be tainted by such an order. Carried to its ultimate, this line of reasoning could result in the denial of *any* motion for movant in *any* discovery procedures. The fact that, in their present stage of development from the scientific standpoint, blood grouping tests can be helpful to the husband but not to the wife, is immaterial. As has often been said, the trial of a lawsuit is essentially a search for the truth and not a mere sporting proposition or game in which arbitrary and artificial rules should be applied in order to afford each side an equal chance of winning.

The application to assume original jurisdiction and the petition for writ of mandamus are both granted.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, WILLIAMS and BERRY, JJ., concur.