2000 OK CIV APP 124

**Terry CORNELIUS, Appellee,**

v.

**Jill CORNELIUS, now Weaver, Appellant.**

**No. 93,885.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 31, 2000.

David W. Phillips, Sand Springs, OK, for Appellee.

Max C. Myers, The Drummond Law Firm, Tulsa, OK, for Appellant.

REIF, J.

¶1 Jill Weaver, formerly Cornelius, appeals a judgment that determined Terry Cornelius, her ex-husband, was the natural father of her daughter J.C. Ms. Weaver contends that the court could not determine Mr. Cornelius' paternity of J.C. in the paternity proceeding below, because their previous divorce decree had determined Mr. Cornelius was not the father of J.C.[1]

¶2 The trial of Mr. Cornelius' paternity claim and Ms. Weaver's res judicata defense was based in most part on agreements by counsel for the respective parties that (1) certain facts were true, and (2) certain events had occurred in earlier stages of the paternity proceeding. In particular, counsel agreed that the man whom Ms. Weaver believed to be J.C.'s father intervened in the proceeding. Counsel also agreed the intervenor was tested along with Mr. Cornelius to determine which man was J.C.'s father. Counsel further agreed that the test of Mr. Cornelius revealed a 99% probability that Mr. Cornelius was J.C.'s father and the test of the intervenor revealed zero percent probability that the intervenor was her father. Mr. Cornelius was the sole witness to testify and he was only asked why he didn't pursue paternity at the time of the divorce. Mr. Cornelius replied: "Because she [Ms. Weaver] told me it was not my child, at the time." Ms. Weaver did not testify, because she was

---

1. The divorce decree does not identify J.C. by name, but contains a finding and order that "the plaintiff [Mr. Cornelius] is not the father of the minor child recently born to the defendant."

There was no dispute at the paternity hearing below that the finding and order in the divorce decree refer to J.C.

absent from the hearing due to her incarceration.

■ ¶ 3 On appeal, Ms. Weaver relies on general principles of res judicata to support her proposition that the trial court was barred from determining that Mr. Cornelius was J.C.'s father in a proceeding subsequent to the divorce decree that found Mr. Cornelius was not the father of J.C. The case of *Arnold v. Arnold,* 1952 OK 367, 249 P.2d 734, lends some support to Ms. Weaver's contention that a determination of paternity in a divorce is binding on the parties in a subsequent proceeding. In *Arnold,* the Oklahoma Supreme Court held that the trial court could not disturb "the original findings as to paternity" in the parties' divorce decree in a subsequent proceeding between the divorced parties for modification of child support. *Id.* at ¶ 8, 249 P.2d at 736. In addition, it is generally accepted that a determination of paternity in a divorce decree will be given preclusive effect in a subsequent proceeding between the husband and the wife. *See* Donald M. Zupanec, Annotation, *Effect, in Subsequent Proceedings, of Paternity Findings or Implications in Divorce or Annulment Decree or in Support or Custody Order Made Incident Thereto,* 78 A.L.R.3d 846 (1977).

¶ 4 The chief problem that this court sees with applying *any* rule of preclusion in this case is that the circumstances of this case are entirely different from the typical case where the determination of paternity in a divorce decree is given preclusive effect. The vast majority of the cases in the A.L.R. Annotation are similar to the *Arnold* case. That is, they involve an attempt by a father to *relitigate paternity* in a subsequent proceeding *to avoid parental obligations,* such as support, adjudicated in the divorce decree. In the instant case, *Mr. Cornelius is seeking to establish parental responsibility* for J.C., not avoid it.

■ ¶ 5 As concerns the issue of Mr. Cornelius' parental responsibility toward J.C., we observe that J.C. was not bound by the finding of Mr. Cornelius' "nonpaternity" in the divorce case. *State ex rel. Evertson v. Cornett,* 1964 OK 83, ¶ 27, 391 P.2d 277, 282. J.C. could maintain a suit to establish Mr. Cornelius' parental responsibility toward her.

This leads us to conclude that the effect of a finding of "nonpaternity" in a divorce case is to simply *remove issues* of custody, support, and visitation of the child in question *from decision by the divorce court.* A finding of "nonpaternity" in a divorce case cannot settle the parent-child relationship once and for all, because it does not adjudicate any obligations in the same way a final, affirmative finding of paternity does.

¶ 6 Even without considering the fundamental difference between a finding of nonpaternity and a finding of paternity, there are good reasons for not giving res judicata or other preclusive effect to the determination in the parties' divorce decree that Mr. Cornelius was not the father of J.C. First, the material circumstances in the instant case are analogous to those in *Metallo v. Musengo,* 353 N.W.2d 872, 874 (Iowa Ct.App. 1984). In *Metallo,* the court of appeals of Iowa ruled that a determination in a divorce proceeding that "[n]o children were born as issue of the parties" would not be given res judicata effect to preclude the husband from subsequently establishing his paternity to a child that was in fact born during the time the parties were married.

¶ 7 In *Metallo,* the husband admitted that he had notice of the dissolution proceeding. There was no dispute that wife's petition for dissolution alleged no children were born as issue of the marriage. Husband explained he did not contest the dissolution because he could not afford an attorney and believed that wife would come back to him. Wife testified she did not disclose the child's birth in the dissolution action because it was her opinion that husband was not the child's father. The court of appeals ruled that husband's subsequent suit for visitation was "not barred by the doctrines of claim or issue preclusion" based on the dissolution decree, because wife's disclosures bearing on the issue of paternity were misleading. *Id.* We see little difference between the misleading statement by the wife in *Metallo* that no children were born of the marriage which was based on the wife's belief that her husband was not the father of a child born during the marriage, and the misleading assertion of Ms. Weaver herein that J.C. was

not a child of her marriage to Mr. Cornelius, because Ms. Weaver believed that Mr. Cornelius was not J.C.'s father.

¶ 8 Next, there is authority that a determination of paternity in a dissolution or divorce decree should *not* be given preclusive effect where "[t]he issue of paternity was never actually litigated in the dissolution [or divorce] proceeding [but] was [based] upon the parties' stipulations." *McDaniels v. Carlson*, 108 Wash.2d 299, 738 P.2d 254, 259 (1987). One of the reasons that the Oklahoma Supreme Court has allowed the issue of paternity to be litigated in a divorce case without making the child a party is that a wife "ordinarily has such an interest in the question [of paternity vis-à-vis support] as to ensure that [paternity] will be adequately presented to the court." *See State ex rel. Evertson v. Cornett*, 1964 OK 83 at ¶ 26, 391 P.2d at 282. The instant case is an example of a case where a wife did not ensure the issue of paternity was "adequately presented to the court" and, instead, sought its determination "upon the parties' stipulations" which, in turn, were based on Ms. Weaver's mistaken notion about which man had fathered J.C.

¶ 9 We further observe that one of the matters that counsel for Mr. Cornelius and counsel for Ms. Weaver agreed upon was that the divorce was heard in August 1997, and was continued "until after the child was born in order to grant the divorce." The journal entry of the decree of divorce was signed and filed September 11, 1997. The journal entry reflects that the divorce was tried August 19, 1997, which means that J.C. was born sometime between August 19, 1997, and September 11, 1997.

¶ 10 Counsel for Mr. Cornelius and counsel for Ms. Weaver also agreed that one reason for the uncertainty about J.C.'s paternity was

that Ms. Weaver "was living with [the intervenor]." This court understands that counsel for the parties were agreeing that Ms. Weaver and the intervenor had lived together during a period of time in which J.C. could have been conceived. We further understand that Ms. Weaver and the intervenor continued to live together through the time of J.C.'s birth and after the divorce of Mr. Cornelius and Ms. Weaver.

¶ 11 We make this observation because it appears that the determination in the divorce decree may also be supported by a presumption that the intervenor was J.C.'s father as set forth in 10 O.S. Supp.1999 § 2(A)(2).[2]. To the extent that the trial court may have relied upon this presumption in entering the finding and order in the divorce decree that Mr. Cornelius was not the father of J.C., we note that Mr. Cornelius could dispute this presumption as provided in 10 O.S. Supp. 1999 § 3,[3] anytime within two years of the entry of the divorce decree. This court notes that the presumption of § 2(A)(2) can be disputed under § 3 by the *filing of a paternity proceeding* within two years of the time that the presumption in § 2(A)(2) arises. Mr. Cornelius filed the paternity proceeding on February 20, 1998, well within two years from the probable time of J.C.'s conception and from the time that the intervenor may have claimed the presumption of § 2(A)(2).

¶ 12 For the foregoing reasons, the trial court did not err in denying res judicata or other preclusive effect to the determination in the parties' divorce decree that Mr. Cornelius was not the father of J.C., and in proceeding to try the issue of J.C.'s paternity in the paternity proceeding. In addition, given Ms. Weaver's incarceration, the trial

2. § 2. **Presumption of paternity**
   A. [A] man is presumed to be the natural father of a child for all intents and purposes if:
   . . . .
   2. Before the child's birth, he and the child's natural mother have cohabitated and the child is born within ten (10) months after the termination of cohabitation.

3. § 3. **Persons entitled to dispute presumption—Time limit**

   A. The presumption of paternity created pursuant to Section 2 of this title may be disputed only by the husband or wife, the putative father or their descendants. Paternity may be established pursuant to Section 70 of this title.
   B. If a child is born during the course of the marriage and is reared by the husband and wife as a member of their family without disputing the child's legitimacy for a period of at least two (2) years, the presumption cannot be disputed by anyone.

court did not err in awarding custody of J.C. to Mr. Cornelius without a transition period. Ms. Weaver was not in a position to assist with such transition and no other person with a statutory preference for custody was a party to the proceeding.

¶ 13 Accordingly, the judgment determining that Terry Cornelius was the father of J.C., and awarding him custody and other relief, is AFFIRMED.

¶ 14 GOODMAN, C.J., and STUBBLEFIELD, J., concur.