9 N.J. Super. 411 (1950)
74 A.2d 919
MILDRED N. ANTHONY, PLAINTIFF,
v.
THEODORE E. ANTHONY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 14, 1950.
*412 Mr. James M. Dunn, attorney for plaintiff.
Messrs. Greenberg, Wilensky & Feinberg (Mr. Victor Greenberg appearing), attorneys for defendant.
HEGARTY, A.M.
This is on defendant's motion for an order directing that blood grouping tests be made. The action is one for divorce by Mildred N. Anthony against Theodore E. Anthony on the ground of desertion. Defendant has denied the desertion and counterclaimed for divorce on the grounds of desertion and adultery, alleging that the plaintiff committed adultery with one Al Varian and that the plaintiff's child Gail Ann is not his daughter but rather the result of the adulterous relationship of plaintiff and Varian. The defendant now moves for blood tests of plaintiff, the child, and himself.
R.S. 2:99-4 provides: "Whenever it shall be relevant in a civil action to determine the parentage or the identity of any child or other person, the court, by order may direct that any party to the action and the person whose parentage or identity is involved submit to one or more blood grouping tests to be made by duly qualified physicians under such restrictions and directions as the court or judge shall deem proper." So far as I can determine this statute has been construed in only one reported case, Bednarik v. Bednarik, 18 N.J. Misc. 633, 16 A.2d 80 (Ch. 1940), which involves *413 the same question here presented. Former Advisory Master Herr, in a scholarly opinion, denied an application for blood grouping tests. The opinion noted the unanimity of legal and medical literature in favor of the tests, pointed out the liberality New Jersey has shown in accepting valid scientific evidence, and accepted the stipulation of the parties as to the worth of the tests. However, the court felt that to grant a compulsory order for the taking of such tests would be a violation of the privilege set forth in R.S. 2:97-9: "No husband or wife in any action or proceeding for divorce on account of adultery shall be compelled to give evidence for the other, except to prove the fact of marriage." The distinction made by many other jurisdictions in sanctioning blood tests, urinalyses, etc., between real and testimonial evidence in order to avoid a constitutional privilege against self-incrimination was noted, but the court thought the use of the word "evidence" in R.S. 2:97-9 too broad to permit the distinction here. The court refused to find a pro tanto repeal by implication of R.S. 2:97-9 by R.S. 2:99-4 saying that to do so would cause grave doubts as to the constitutionality of the latter statute since it was felt that such an interpretation would violate Art. I, par. 1, of the New Jersey Constitution, since "to subject a person against his will to a blood test is an assault and battery, and clearly an invasion of his personal privacy."
It is with deep regret that I feel constrained to disagree with Advisory Master Herr's conclusions as summarized above. However after a careful consideration of the question, I cannot do other than follow what is my view of the intent of the Legislature in enacting R.S. 2:99-4 which I believe reflects a recognition of "the theory that the evolution in practical affairs of life, whereby the progressive and scientific tendencies of the age are manifest in every other department of human endeavor, cannot be ignored in legal procedure, but that the law, in its efforts to enforce justice by demonstrating a fact in issue, will allow evidence of those scientific processes which are the work of educated and skillful men in their various departments, and apply them to the demonstration *414 of a fact," State v. Cerciello, 86 N.J.L. 309, 314, 90 A. 1112 (E. & A. 1914).
First, it seems clear that the accuracy and worth of the tests has been abundantly shown. "On this point it is enough to cite the report of the American Medical Association's committee on Medicolegal Blood Grouping Tests (108 Jour. of Am. Med. Ass'n., 2138-42, June, 1937), which shows that although such tests cannot prove paternity and cannot always disprove it, they can disprove it conclusively in a great many cases provided they are administered by specially qualified experts." Beach v. Beach, 114 F.2d 480 (D.C. Cir. 1940), wherein an order granting a blood grouping test, under the same circumstances as here, was affirmed under the authority of Rule 35 (a) of the Federal Rules of Civil Procedure, similar to our Rule 3:35-1 permitting physical and mental examination of parties. Further medical authorities are cited in the Bednarik case, supra, in a footnote at page 635. In Jordan v. Mace, 69 A.2d 670 (1940), the Supreme Judicial Court of Maine, recognizing the worth of the tests, held that where exclusion of parentage was shown by competently given tests, the evidence was conclusive. The New York Appellate Division for the First Department in Com'r. of Welfare v. Costonie, decided June 13, 1950, accepted the reasoning of Jordan v. Mace, supra, reversed the trial court which had found against the defendant in a bastardy proceeding in the face of an exclusionary result of tests, and ordered a new trial only since there were some gaps in the evidence as to the method by which the tests were made. A concurring opinion by Justice Shientag stated: "The scientific opinion on that point (the validity of the tests) is so general that courts may take judicial notice of it in filiation proceedings." An article in 124 N.Y. Law Journal 12 (July 5, 1950) reveals the Appellate Division's decision to give decisive effect to the exclusion was not lightly reached. Discussing the facts which included a written admission of paternity, payment of hospital bills, etc., it said, "It is difficult to conceive of a paternity case where there was stronger evidence of paternity." The State *415 of New York law is now said to be, 124 N.Y. Law Journal 20 (July 6, 1950): By reason of the Costonie case "* * * the decision in Cuneo v. Cuneo, 96 N.Y.S.2d 899, April 24, 1950), granting an annulment to the husband on the basis of a blood test exclusion may now properly be followed in future matrimonial actions * * * when confronted with such scientific evidence that the husband is not the father of the wife's child." A most interesting and impressive study of the medical and legal effect of blood tests is to be found in Schatkin, Disputed Paternity Proceedings (2d Ed. 1947), the author of which as Assistant Corporation Counsel of New York City has had much experience in this type of case. See in particular Ch. VIII, "The Unerring Accuracy of Blood Tests," where for example it is shown that in 655 blood tests made between 1935 and 1945 by order of the Court of Special Sessions and resulting in 65 exclusions, every case of an exclusion "was followed by the mother's subsequent confession, for the first time, of sexual relations with another man about the time she became pregnant."
Thus the weight of authority in favor of the accuracy and value of the tests is substantial. Would such a test be "relevant," in the words of the statute, in this case? The plaintiff's child was born in August, 1947. The parties were married in August, 1942. If it were shown that the defendant-counterclaimant was not the father, telling proof of adultery would exist, although I do not hold here that it would be conclusive. Certainly such evidence is relevant.
If, then, blood tests are accurate, relevant, and on its face apparently authorized by statute, should not an order for such a test upon proper terms be granted? As outlined above, the opinion of the court in the Bednarik case, supra, first suggested that to grant such an order would violate R.S. 2:97-9 which provides that neither spouse shall be compelled to give evidence in a divorce proceeding on account of adultery except as to the fact of marriage. New Jersey has no constitutional privilege against self-incrimination but in R.S. 2:97-7 it is provided, restating the decisional law, that no *416 witness shall be compelled to answer any question (emphasis added) exposing him to a criminal prosecution. There is a difference in wording between the two statutes which appears to prevent the drawing, in adultery cases, of the well recognized distinction between real and testimonial evidence. See 4 Wigmore on Evidence (2d Ed.), § 2265. However, it would seem that the broad rule against self-incrimination is stated in R.S. 2:97-7, and the more particular and limited doctrine in R.S. 2:97-9. Certainly it is within the legislative competence to enact an exception to that rule for a particular type of real evidence, the blood test. R.S. 2:97-9 is derived from the law of 1900; R.S. 2:99-4 became law in 1939. While it is not proper statutory interpretation to find repeal by implication, neither can clear words of a statute be disregarded. Where the purpose of legislative action is evident although inconsistent with prior statutes, it should be effectuated. I cannot find that a case such as here, a divorce action based on adultery, does not come within the words of R.S. 2:99-4, that: "Whenever it shall be relevant in a civil action to determine the parentage or the identity of any child * * *, etc.," (emphasis added). I, therefore, hold that the granting of an order for blood grouping tests is authorized in such a case as the present.
Is such a holding based on an unconstitutional interpretation, as violative of Art. I, par. 1 of the Constitution as suggested in the Bednarik case? No doubt, in accordance with the majority view, a right of privacy is recognized in this State, either as technical right of property, Vanderbilt v. Mitchell, 72 N.J. Eq. 910, 919, 926 (E. & A. 1907), or derived from that part of the Constitution referred to above, McGovern v. Van Riper, 137 N.J. Eq. 24, 33 (Ch. 1945). However I do not believe that the order of a compulsory blood grouping test will infringe upon this right. In McGovern v. Van Riper, supra, and as affirmed, 137 N.J. Eq. 548 (E. & A. 1945), it was held that the taking of fingerprints of one accused of a crime was proper since "the slight interference with the person entailed thereby is well warranted in the common *417 interest." The pin prick of a blood grouping test is hardly more substantial than the ignominy of the fingerprinting process under an accusation of crime. A pin prick, and a more painful one, is authorized by R.S. 18:14-52 which permits school boards to exclude from attendance unvaccinated children, and which has been held constitutional. Sadlock v. Board of Education, 137 N.J.L. 85 (Sup. Ct. 1948). The court there found that such a statute was a valid exercise of the police power to prevent the spread of smallpox. I believe that the health of our judicial system, depending as it does on the finding of truth so that justice may be done, is of equal importance with the physical health of the community. I cannot believe that a blood grouping test made by skilled physicians constitutes the mythical nose of the camel under the tent which will be followed by such extreme measures as the trepanning of the skull of a witness. I am now asked to grant an order for a test, harmless and practically painless, which may furnish the most convincing evidence on an essential issue of this case. For the reasons above set forth and as authorized by statute, I shall grant such an order. Since R.S. 2:99-4 includes in its terms the testing of the child whose parentage is involved and since the child is as always under the protection of this court, I do not feel that it is necessary to appoint a guardian ad litem for her.
An order may be submitted providing for the making of blood grouping tests of the plaintiff, the defendant, and the child Gail Ann by two physicians duly qualified by training and experience.