Hillsborough,
No. 4217.

RAYMOND H. GROULX

*v.*

ROSE GREGOIRE GROULX *by her father and next friend.*

Argued February 2, 1954.

Decided March 2, 1954.

*Devine & Millimet* (*Mr. J. Murray Devine* orally), for the plaintiff.

*James B. Sullivan* and *Maurice A. Broderick* (*Mr. Broderick* orally), for the defendant.

KENISON, C. J. In legal proceedings involving the legitimacy of a child, modern developments in medicine and science enable qualified experts conducting accurate blood grouping tests to disprove paternity in appropriate cases. Since the first reported American case on a blood grouping test in 1931 (*Commonwealth* v. *Zammarelli*, 17 Pa. D. & C. 229), there has been steady and increasing judicial recognition of the accuracy and reliability of such tests. *Jordan* v. *Mace*, 144 Me. 351; Anno. 163 A. L. R. 939. Some of the earlier authorities are collected and analyzed in I Wig., Ev. (3rd *ed.* 1940) *ss.* 165a, 165b; Schatkin, Disputed Paternity Proceedings (1st *ed.* 1944) *c.* V; Wig., Science of Judicial Proof (3rd *ed.* 1937) *ss.* 88-90; Maguire, A Survey of Blood Group Decisions and Legislation in the American Law of Evidence. 16 So. Calif. L. Rev. 161 (1943). It is true that in some jurisdictions the reliability of blood grouping tests has been disregarded (*Arais* v. *Kalensnikoff*, 10 Cal. (2d) 428; *Berry* v. *Chaplin*, 74 Cal. App. (2d) 652) but these decisions are not representative of the modern rule today. Harper, Problems of the Family (1952) *pp.* 112-114; 29 N. D. L. Rev. 156 (1953); 50 Mich. L. Rev. 582 (1952). See Schatkin, *supra* (3rd *ed.* 1953).

While New Hampshire has adopted the Uniform Act on Blood Tests to Determine Paternity (Laws 1953, *c.* 126) it cannot control the determination of this case which was heard and decided before the enactment of that statute. However it may be noted that scientific and medical evidence from qualified experts is generally accepted in this jurisdiction in both criminal and civil cases. *State* v. *Baron*, 98 N. H. 298; *Bohan* v. *Company*, 98 N. H. 144, 147. Whatever defects there may be in this trend it at least avoids the

common criticism made elsewhere that ". . . trial courts have tended to lag far behind" in utilizing probative methods developed by medicine and science. Maguire, Evidence, Common Sense and Common Law (1947) 30. It is unnecessary to decide in this case whether the blood grouping tests should be regarded as conclusive or only evidentiary, since *Saunders* v. *Fredette*, 84 N. H. 414, establishes the rule that the presumption of legitimacy need not be rebutted by conclusive evidence but may be rebutted by clear and convincing proof. This brings us to a consideration of the blood grouping tests used in this proceeding.

Two blood samples each from the plaintiff, the defendant and the child were taken by a licensed physician in this state. They were labeled by name and contained the initials of counsel for both parties and they arrived at the laboratory in good condition in "vacutainer" test tubes. A partial vacuum was noted in each tube when opened indicating that the seal was intact. Typing tests were done independently by Dr. Allen and his technician and the results agreed in every particular. The tests showed that the blood cells of the plaintiff and the defendant lacked the S factor but those of the child contained the S factor. Paternity of the plaintiff was excluded by Dr. Allen's report because of the genetic rule that a child cannot have the S factor in its blood cells unless S is also present in the blood cells of at least one of the parents. The report conceded that the genetic data was much greater in the blood groups A-B-O, M-N and Rh but gave two reasons which were said to counterbalance the paucity of family studies. First, the laboratory had two excellent anti-s typing reagents from two different sources which previous tests indicated were pure and potent. Secondly, it was stated that the serum anti-s had been tested in parallel with the serum "Muller" so that it was "fantastically improbable" that the plaintiff and defendant would have weak variants of S which would combine to produce the appearance of a strong S in the child Rita. The report concluded that the genetic laws shown by the family studies under the A-B-O, M-N and Rh groups apply without modification to the S groups, as well as to the Kell and Duffy blood group systems.

After Dr. Allen's report was received by the court, Dr. A. S. Wiener of New York, a leading authority in blood grouping tests, wrote Dr. Allen that his conclusions as to exclusion of paternity based on the S factor alone were "too strongly worded." Thereupon Dr. Allen modified his original opinion in some details as appears

in the statement of facts but reaffirmed his essential conclusion as appears from the following concluding paragraph: "My personal opinion is that exclusion of paternity is demonstrated by the tests with anti-S, as stated in my original report, and that the evidentiary value of my tests is greater than any other biologic tests which might be done in this particular case at the present time. This letter is written to make it clear that this is my personal opinion, which might, or might not, be fully shared by Dr. Wiener. In order not to jeopardize the future value of tests with anti-s in legal cases, I should have to testify that the tests done in this case with anti-s do not absolutely exclude paternity, because of the present lack of a sufficient body of genetic data." Whether Dr. Allen discussed the matter by telephone with Dr. Wiener as the latter suggested does not appear from the record.

The Trial Court interpreted Dr. Wiener's letter as being primarily concerned with the effect that Dr. Allen's strongly worded report would have "on medicolegal blood grouping tests" and not indicating that the tests were entitled to no evidentiary value. See the report of Dr. Wiener and others entitled, "Medicolegal Application of Blood Grouping Tests." 149 Journal, American Medical Association (June 14, 1952) 699. We conclude that the blood grouping tests in this case were entitled to evidentiary weight even though they do not have the benefit of the full genetic data that is available in the more common blood groups such as A-B-O, M-N and Rh-Hr. See Andresen, The Human Blood Groups (1952) 43. In this respect the blood grouping tests were like other expert opinion evidence and entitled to such weight as the Trial Court wished to give them. See *Ricard* v. *Insurance Co.*, 87 N. H. 31, 36.

The Presiding Justice based his findings and decree not only on the opinion of the experts but on the conflicting testimony of the plaintiff and defendant and their witnesses as to whether or when the parties had met after their separations during the probable period of conception. Furthermore the child was in the courtroom and the Presiding Justice stated that he had looked at the child and the plaintiff several times during the trial. *State* v. *Danforth*, 73 N. H. 215. On all the evidence we cannot say that the finding as to the exclusion of paternity was erroneous as a matter of law. *Saunders* v. *Fredette*, 84 N. H. 414.

Error is claimed in that no guardian *ad litem* was appointed for the child. See *Hollis* v. *Tilton*, 90 N. H. 119; R. L., c. 341, s. 1. No such request was made at any time during the trial. The interests

of the mother and the child were not inconsistent and the mother's interest was protected by competent counsel. Under these circumstances there is no mandatory requirement that a guardian *ad litem* should have been appointed even if the Court in its discretion would have made the appointment upon request. *Merchants Mut. &c. Co.* v. *Kiley*, 92 N. H. 323; *Yager* v. *Yager*, 313 Mich. 300.

The birth record of the child, which included the name of the plaintiff as father, was accepted by the Trial Court only as evidence of the date of birth. R. L., c. 337, s. 10, makes the town clerk's record of birth *"prima facie* evidence of the fact."  See also, R. L., c. 337, s. 1, as amended by Laws 1949, c. 98, s. 1.  Since a death certificate is considered *prima facie* evidence of the cause of death (*Abbott* v. *Insurance Co.*, 89 N. H. 149), it is argued that the birth certificate is *prima facie* evidence of the fact that the plaintiff was the father of the child.  Under the ruling in the *Abbott* case, the birth certificate was admissible and its admissibility was not limited solely to the date of birth.  The plaintiff agreed that the child was born on July 16, 1951, and that the defendant was the mother but naturally did not agree to the statement contained therein that the plaintiff was the father of the child.  While the Court restricted the evidence of the birth certificate to a greater extent than the *Abbott* case allowed, it cannot be said under the circumstances of this case that the result might have been different if it had been admitted generally and without restriction.

*Exceptions overruled.*

All concurred.