Annemarie Hoffman BECKWITH, Appellant,

v.

Robert T. L. BECKWITH, Appellee.

No. 9426.

District of Columbia Court of Appeals.

Argued Nov. 13, 1975.

Decided April 1, 1976.
Rehearing and Rehearing en Banc
Denied June 1, 1976.

Thomas Penfield Jackson, Washington, D. C., with whom Patricia D. Gurne, Washington, D. C., was on the brief, for appellant.

Elizabeth R. Young, Washington, D. C., for appellee.

Before KELLY and KERN, Associate Judges, and TAYLOR, Associate Judge, Superior Court.*

TAYLOR, Associate Judge:

In an action for absolute divorce on the grounds of adultery the husband-appellee alleged that a child was born to his wife as a result of the commission of the act charged in the complaint. He was denied permission to add the child as a party defendant. The wife, in her answer, admitted that she executed a document purporting to state that the appellee was not the father of the child, but alleged that the document was obtained by fraud and duress and thus of no force and effect. She filed a counterclaim against the appellee for, *inter alia*, an absolute divorce on the grounds of adultery or desertion and moved for suit money and counsel fees.

On March 10, 1975, the lower court granted appellant's motion. However, the court at the same time, sua sponte, ordered (1) that appellant submit herself and her child to blood grouping tests and (2) that

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

payment of the suit money and counsel fees be conditioned upon the filing of the test results with the court.[1] In its March 19, 1975 order on reconsideration the court reaffirmed its March 10 order in all respects and ruled that the legitimacy of the child was in issue in this proceeding pursuant to D.C.Code 1973, § 16–909. No guardian ad litem was specifically requested of, or appointed by, the court. This appeal is from both aspects of the sua sponte order of the court.[2]

The issues raised by the answers to the complaint and counterclaim have not come on for trial even though the complaint was filed over two years ago. The delay is, in part, the result of the wife's efforts to assure that the outcome of this proceeding will not affect adversely her child's right, through her husband, to inherit under the Mary Harlan Lincoln Testamentary Trust, a trust established by the wife of Todd Lincoln, Abraham Lincoln's son. The lengthy pleadings and judicial actions thereon are set out in the Appendix of this opinion.

Appellant's challenges to the order requiring her to submit her child to blood grouping tests, and to do so prior to the payment of suit money and counsel fees, will be considered in our resolution of the following five issues: (I) Does the court have jurisdiction in an action for absolute divorce on the grounds of adultery to order a mother, who is before the court, to submit her child to blood grouping tests for the sole purpose of deciding the issue of adultery where the child is not a party, not a resident, not represented by a guardian ad litem, and where there is no request before the court for support, maintenance, or custody? (II) Does the court in an action for absolute divorce on the grounds of adultery have discretionary authority under a statute or rule to order a mother who is before the court to submit her child to blood grouping tests for the sole purpose of deciding the issue of adultery and, if so, was such discretion exercised without abuse in this case? (III) Does the ordering of blood grouping tests of a child in a divorce proceeding to prove adultery violate the child's constitutional right to privacy?[3] (IV) Does the absence of a guardian ad litem in this case deny the child due process of law? (V) Does the conditioning of an award of suit money and counsel fees on submission of a mother and her child to blood grouping tests violate the mother's right to counsel and due process?

We answer questions I and II in the affirmative, and questions III and IV in the negative. For the reasons set forth herein, we do not reach question V.

## I.

The initial question is one of first impression in this jurisdiction and, insofar as we are aware, any other jurisdiction. The question raises issues relating to the court's personal jurisdiction over the appellant, jurisdiction over the subject matter, and jurisdiction to enter an order affecting a nonparty.[4] First we consider appellant's

---

1. The appellee was also required to submit to blood grouping tests and to cause the results to be filed with the court.

2. Neither the appellant nor the appellee challenges the award of suit money (travel expenses from Germany) and counsel fees.

3. Appellant does not challenge the constitutionality of the blood test order with respect to her submission on these grounds. Appellant's lone constitutional objection with respect to her own rights is noted in question V.

4. Specifically, appellant argues that the court was without jurisdiction to require her to submit her minor child to blood grouping tests because:
   (a) The infant is not a party and has not been served with process in the lawsuit and is not represented by counsel or a Guardian *ad litem*; and
   (b) The infant is not a resident of nor physically present in the District of Columbia but is a resident of West Berlin, the Federal Republic of Germany; and
   (c) The legitimacy *vel non* of the infant is not in issue in the lawsuit; and

contention that the filing of her counterclaim did not give the lower court personal jurisdiction over her.

■■■ Superior Court Domestic Relations Rule 13(a) provides that a defendant brought suit upon by process by which this court did not acquire jurisdiction to render a personal judgment need not file a compulsory counterclaim.[5] As a nonresident defendant to a divorce proceeding, Mrs. Beckwith, upon substitute service, was not subject to in personam jurisdiction. She could have answered and defended on the merits after motions referred to in the Appendix were overruled without waiving her objections to the court's jurisdiction.[6] However, she chose to counterclaim for divorce, which as not compulsory, was voluntary, and gave rise to personal jurisdiction. It is well settled that availing oneself of the jurisdiction of a court by filing a voluntary claim subjects the claimant to personal jurisdiction.[7] We now turn to the question of subject matter jurisdiction and jurisdiction to enter an order affecting a nonparty.

■■■ Where there is subject matter jurisdiction, a court having personal jurisdiction may by its order affect persons other than those personally before it, *Alves v. Alves*, D.C.App., 262 A.2d 111 (1970), and may order an act which has an effect in another state or is to be carried out in anothe state. *New York v. O'Neill*, 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959); *Argent v. Argent*, 130 U.S.App.D.C. 46, 396 F.2d 695 (1968); H. Goodrich & E. Scoles, Conflicts of Laws, §§ 77–78 (4th ed. 1964). In the *Alves* case, the parents were personally before the court. This court held that the lower court had jurisdiction to enter an order that would determine the child's custodian, although the child was not present or a party. In deciding that a matter affecting the child could be decided without his presence, this court rejected "hard and fast rules of jurisdiction" in cases involving the internal affairs of the family unit. Similarly, we do so in the instant case and hold that the lower court had jurisdiction to issue the order challenged in this appeal.

In this case the subject matter over which the court had jurisdiction is the question of the paternity of the child as proof on the issue of adultery. The basic pleadings in this case call into question the paternity of the child. Appellee-plaintiff in support of his complaint for divorce on grounds of adultery denies his paternity. He implies that blood grouping tests are or may be inconsistent with his paternity. appellant-defendant, by her answer, contests the validity of his allegations and thus, by implication, denies that blood grouping tests could be inconsistent. Subject matter jurisdiction is jurisdiction over a matter in controversy. As blood tests are relevant to a determination of the issue of adultery in this case, and the possible results are in dispute by the parties, blood groupings are in controversy[8] and thus part of the subject matter of this case.

In failing to recognize that the matter in controversy was the question of the paternity of the child as proof on the issue of adultery, as distinguished from the question of the legitimacy of the child for all purposes, appellant misconstrues the real

---

(d) No relief in the nature of maintenance, support or custody is sought on behalf of or against the infant. [Brief and Appendix for Appellant at 1.]

5. *See Advisory Committee's Note of 1963 to Subdivision (a) of Rule 13.* 3 J. Moore, Federal Practice ¶ 13.01, at 29 (2d ed. 1972).

6. *Morfessis v. Marvins Credit, Inc.*, D.C. Mun.App., 77 A.2d 178 (1950); Super.Ct.

Dom.Rel.R. 12(b). *But cf. Davis v. Davis*, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1938).

7. *Adam v. Saenger*, 303 U.S. 59, 67–68, 58 S. Ct. 454, 82 L.Ed. 649 (1938).

8. *Beach v. Beach*, 72 App.D.C. 318, 320–21, 114 F.2d 479, 481–82 (1940).

jurisdictional basis of the order of the lower court. The order is not directed to the child. It is directed to a party who personally appeared before the court, and it requires her to perform an act within her power to perform as a lawful custodian of the child. The order requires no more of her than an order requiring her to give up custody of the child or to feed and clothe the child within the limits of a maintenance order, and in both such cases orders for blood tests have been upheld even though the child was not an actual party. *Beach v. Beach*, 72 App.D.C. 318, 114 F.2d 479 (1940); *State v. Cornett*, 391 P.2d 277 (Okl.1964).

In *Beach, supra,* a divorce proceeding on the grounds of adultery in which maintenance for the child was requested, the court ordered blood grouping tests of the husband, wife and child to aid in determining paternity. It did so pursuant to Rule 35 of the Federal Rules of Civil Procedure, which at that time permitted the court to order a physical examination only of a party.[9] The court solved the problem presented by the absence of the child by concluding that the child was "in substance" a party for purposes of the case because "[s]ocially, [the child] is a most important party." *Id.,* 72 App.D.C. at 321, 114 F.2d at 482. However, the child was not made an actual party.

In *State v. Cornett, supra,* the husband brought an action for absolute divorce on the grounds of adultery alleging that he was not the father of the child born during the marriage. The wife counterclaimed for divorce, alimony, custody of the child and child support money. She contended that the trial court was without power to order a blood test for the· child because no guardian ad litem had been appointed and the child had not been made a formal party plaintiff or defendant in the suit. In hold-

ing that the court had jurisdiction to order the wife to submit her child to a blood test the court held that:

> [A] child whose paternity is questioned in a divorce action is not a necessary party to the action, and that the joinder of such child as a party is not a pre-requisite to the ordering of blood tests for the child. [*Id.,* 391 P.2d at 282.]

The appellant would distinguish the *Beach* and *Cornett* cases on the basis that they involved maintenance or ˊ custody, whereas the instant case does not. Apparently it is appellant's view that maintenance and custody cases directly affect the welfare of the child, whereas in an adultery case the welfare of the child is not affected directly, and that it is only in the former situation that the court has subject matter jurisdiction to issue an order affecting a nonparty. For jurisdictional purposes this is a distinction without a difference. In both situations the court had in personam jurisdiction over the mother; and in both situations the matter in controversy affects the affairs of the family as a unit. Since we reject "hard and fast rules of jurisdiction" in matters affecting the family unit, as did the court in the *Alves* case, ˙supra, the degree to which the family unit is affected does not control the question of jurisdiction. Whether or not jurisdiction should be exercised in either case is a separate question.

█ While in certain circumstances courts have declined to order acts by those personally before the court that affect others not present and in other states or countries, this reluctance is a reluctance to exercise jurisdiction, not lack of jurisdiction.[10] It may be overcome by exigencies such as the exigencies of domestic life, as here.[11] Furthermore, as recognized by the lower court, and as stated in *State v. Cornett,*

---

9. The rule was amended in 1970 so as to provide, among other things, that the court may order a physical examination of one who is under the legal control of a party.

10. H. Goodrich & E. Scoles, *supra* § 78.

11. See Judge Traynor's opinion in *Sampsell v. Superior Court,* 32 Cal.2d 763, 197 P.2d 739 (1948).

"the trial of a lawsuit is essentially a search for the truth and not a mere sporting proposition or game in which arbitrary and artificial rules should be applied in order to afford each side an equal chance of winning." 391 P.2d at 283.

D.C.Code 1973, § 16–2343, discussed in Part II, *infra*, recognizes the relevancy of blood tests in adultery actions by providing that in such cases the court may order blood tests of the mother, father, and minor children. If the exercise of jurisdiction to order blood tests of children were limited to those instances where the children are physically present or domiciled in the District of Columbia, or the subject of a support, maintenance or custody action, it would vitiate the statute's use in many adultery cases because the children often reside with one spouse in a jurisdiction different from that of the other spouse after the separation of the parents.[12] However, a relevant consideration in each case is due process; namely, are the child's interests, insofar as they are affected by an order, adequately protected by his mother. In the case before us the record shows that the child's interests are adequately protected.[13] We hasten to add that the interests which are affected in this case relate only to the determination of adultery, as the child, for the reasons stated at the conclusion of the Part I, is not bound by the result of this proceeding in any subsequent case where his legitimacy is questioned.

■ Our conclusion that the court had jurisdiction and that there was no abuse of discretion in exercising same has been without reliance upon the primary basis stated by the lower court for its jurisdiction. The lower court based its determination of subject matter jurisdiction primarily on D.C.Code 1973, § 16–909, stating in its March 19, 1975 order that § 16–909 gave rise to a "mandatory duty of the court to establish legitimacy. . . ." We reach a contrary conclusion.

D.C.Code 1973, § 16–909, provides in full as follows:

> *A divorce for a cause provided for by this chapter does not affect the legitimacy of the issue* of the marriage dissolved by the divorce, but the legitimacy of the issue, if questioned, shall be tried and determined according to the course of the common law. [Emphasis added.]

The predecessor statutes to § 16–909 do not appear to have been the subject of judicial interpretation in this jurisdiction. The legislative history is quite sparse, and the State of Maryland did not have a similar statute at any time prior to § 16–909's enactment.[14]

The first appearance of the present § 16–909 was in the 1857 proposed code for the District of Columbia that was not passed by the voters and therefore did not become positive law. It provided:

> *A divorce for other causes than those hereinbefore specially provided for, shall not affect the legitimacy of the issue* of the marriage; but the legitimacy of such issue, if questioned, shall be tried and determined according to the course of the common law.[15] [Emphasis added.]

In 1860, § 16–909 first appeared as positive law in the District of Columbia as follows:

> *And be it further enacted, that a divorce for causes not hereinbefore spe-*

---

12. This split-residence problem was the basic reason this court, in *Alves*, rejected "hard and fast rules" and exercised jurisdiction. 262 A.2d at 117.

13. The adequacy of the appellant's protection of the child's interest is shown in Part IV, *infra*, where we conclude that the failure of the court to appoint a guardian ad litem did not deny the child due process of law.

14. "The common law, all British statutes in force in Maryland on February 27, 1801 . . . shall remain in force except in so far as the same are inconsistent with, or are replaced by, some provision of the 1901 Code." D.C.Code 1973, § 49–301.

15. Revised Code of the District of Columbia, tit. X, ch. 69, § 12 (1857).

*cially provided for, shall not affect the legitimacy of the issue* of the marriage; but the legitimacy of such issue, if questioned, shall be tried and determined, according to the course of the common law.[16] [Emphasis added.]

The 1860 provision remained unchanged as to substance during subsequent enactments and compilations[17] until 1901. In 1901 it was changed to substantially its present form,[18] with changes in phraseology in 1963.[19]

By comparison of the successive statutes it is apparent that all of § 16–909's predecessors provided that a divorce should not affect the actual status of the child as legitimate or not, except for those causes for divorce that were "hereinbefore specially provided for" in the prior to 1901 enactments. In those enactments such causes were bigamy and lunacy.[20] The pre-1901 statutes never provided that a divorce on grounds of adultery could affect the legitimacy of the child, even though evidence of illegitimacy was presented to prove the underlying cause of action for divorce. After the enactment of 1901, § 16–909 precluded all divorce actions from affecting the status of the child as legitimate or not.

The highest court in the Commonwealth of Massachusetts has interpreted a statute most similar to § 16–909, namely:

A divorce for adultery committed by the wife shall not affect the legitimacy of the issue of the marriage, but such legitimacy, if questioned, shall be tried and determined according to the course of the common law. [G.L. (Ter.Ed.) ch. 208, § 25.]

In *Sayles v. Sayles,* 323 Mass. 66, 80 N.E. 2d 21 (1948), the husband sued for absolute divorce on the grounds of adultery. The lower court found that "in fact the child is the result of intercourse by the libellee and a man other than the libellant." In applying its statute, the court on appeal held that it relied upon the aforesaid finding "only to the extent that it is a finding of adultery. . . . [because] the issue is not illegitimacy but adultery, as to which the birth of a child is not an essential element. . . . The child will not be bound by the decision."[21]

Our analysis of § 16–909's derivation and the opinion in the *Sayles* case, leads us to conclude that § 16–909 merely removes the adjudication of the status of the child from the divorce proceedings when the subject matter of the divorce action would call into question legitimacy, and does not create a mandatory duty for, or grant discretionary authority to, the court to determine legitimacy so as to provide a basis for subject matter jurisdiction.[22]

16. Act of June 19, 1860, ch. 158, § 8, 12 Stat. 60.

17. Revised Statutes of the United States relating to the District of Columbia, ch. 22, § 744 (Washington 1875); The Compiled Statutes in force in the District of Columbia, ch. 30, § 40 (W. Abert & B. Lovejoy 1894).

18. Act of March 3, 1901, ch. 854, § 974, 31 Stat. 1346.

19. Act of December 23, 1963, ch. 9, § 16–909, 77 Stat. 561.

20. Revised Statutes of the United States relating to the District of Columbia, ch. 22, §§ 742–44 (Washington 1875); The Compiled Statutes in force in the District of Columbia, ch. 30, §§ 38–40 (W. Abert & B. Lovejoy 1894). In the non-enacted 1857 Revised Code such causes included certain causes in addition to bigamy and lunacy. Revised Code of the District of Columbia, tit. X, ch. 69, §§ 9–12 (1857).

21. *Sayles v. Sayles, supra* at 23. (There is no indication in the reported case that the child was made a party.)

22. Our interpretation of § 16–909 is well summarized by Flaherty in his work on District of Columbia practice, as follows:

Where the issue as to the legitimacy of a child is raised in a divorce action, the finding of the court on that issue is not determinative of the question of the paternity of the husband in such divorce suit, even though he may have successfully disputed the legitimacy of the child insofar as concerns the immediate purposes of the divorce case as such, but the question of the legiti-

Finally, we hold, as did the court in *Sayles*, and in accordance with the prevailing authority,[23] that the child will not be bound by a decision in the instant case that the appellee is not his father. Although couched in terms of legitimacy, such a decision must be carefully distinguished from a decision on the issue of legitimacy *vel non* for purposes other than proving adultery.

## II.

Jurisdiction having been found, the next question is whether the court had discretionary authority under a rule or statute to order the appellant to submit her child to blood grouping tests for the sole purpose of deciding the issue of adultery and, if so, was such discretion exercised without abuse in this case.

Two provisions in the Rules of the Superior Court, and one in the District of Columbia Code, provide for the issuance of an order requiring a mother to submit her child to blood tests, specifically, Super.Ct. Dom.Rel.R. 35; Super.Ct.Dom.Rel.R. 405 (f); and D.C.Code 1973, § 16–2343. Rule 405(f) refers only to paternity cases initiated pursuant to D.C.Code 1973, § 11–1101(11) and requires "written motion." Superior Court Domestic Relations Rule 35 incorporates by reference Civil Rule 35 and requires "notice and motion." D.C.

Code 1973, § 16–2343 refers to all cases initiated pursuant to D.C.Code 1973, § 11–1101, inclusive of divorce on the grounds of adultery, and is silent on the question of notice and motion.

We conclude that § 16–2343 is authority for the order of the lower court in this case. Section 16–2343 provides that when it is relevant to an action for divorce:

> [T]he court may direct that the mother, child, and the respondent submit to one or more blood tests to determine whether or not the respondent can be excluded as being the father of the child, but the results of the test may be admitted as evidence only in cases where the respondent does not object to its admissability.

Here, since blood tests are relevant to this action for divorce, § 16–2343 is applicable.[24]

Although the lower court did not refer to § 16–2343 in its order on reconsideration of March 19, 1975, it did make findings therein as to the relevance of the evidence that may be adduced from the blood tests to the matter in controversy and the need for such evidence in determining the truth.[25] For these reasons we conclude that the trial court did not abuse its discretion.[26]

---

macy of the child must be determined, if at all, in an independent action for that purpose. [2 P. Flaherty, District of Columbia Practice With Forms, § 1600 (1949).]

23. The authorities are well summarized in Annot., 65 A.L.R.2d 1381 (1959), as follows:
Even though the paternity of a child has been placed in issue and adjudicated in an action for a divorce or annulment, and it is therefore res judicata as between the husband and wife . . . the adjudication is not binding on the child in a subsequent action between him and one of the spouses if he was not made a party to the action for divorce or annulment. [*Id.* at 1396.]
And an adjudication of illegitimacy or non-paternity is not binding on the child when it claims a share of a decedent's estate as heir of the husband or an interest in a trust as the lawful child of the hus-

band. [*Id.* at 1397. The one exception to this rule is by statute in Kentucky. *Id.* at 1399.]

24. Neither the lower court nor any of the parties referred to § 16–2343 in this proceeding. The statute was amended in 1971 so as to provide for the ordering of blood tests in divorce proceedings, the prior provision limiting blood tests to paternity cases. Appellant was permitted to submit a supplemental brief concerning the effect of § 16–2343 in this proceeding. Appellant's position that "mother" in the statute should be read to mean "father," and "respondent" to refer to "mother" in this proceeding, is without merit.

25. Part I, *supra*.

26. *See generally Minor v. District of Columbia*, D.C.App., 241 A.2d 196 (1968), constru-

It is unnecessary to our decision in this case to decide if notice and motion are required under § 16–2343 as the purpose of notice and motion, the opportunity for each side to present its position, has been served by the attention given by the trial court to appellant's motion for reconsideration.

As § 16–2343 provides authority in this case for the court's order we need not reach the question of whether Rule 35 provides a basis for the court's order, as urged by appellee, nor need we consider appellant's numerous objections to the application of Rule 35 to this case.[27]

### III.

■ We consider, and reject, appellant's contention that the ordering of blood grouping tests of a child in a divorce proceeding to prove adultery violates the child's constitutional right to privacy.

The Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the principal blood test case, set out the factors for our consideration. The defendant in *Schmerber* had been arrested at a hospital where he was undergoing treatment for injuries sustained in an automobile accident. Over his objections, at the direction of a police officer, a sample of defendant's blood was withdrawn and analyzed. The Supreme Court found that the taking of the defendant's blood, its being tested and its admission into evidence did not violate the defendant's right to the "security of one's privacy." *Id.* at 767, 86 S.Ct. 1826, 16 L.Ed.2d 908. In reaching its conclusion the Court considered two questions that are of relevance to our inquiry: (1) was the intrusion carried out in a reasonable manner and (2) was the nature of the intrusion reasonable under the circumstances. *Id.* at 768, 86 S. Ct. 1826, 16 L.Ed.2d 908.

First the intrusion ordered by the lower court will be carried out in a reasonable manner. The tests are to be performed by a reputable medical laboratory following accepted medical procedures. Second, the nature of the intrusion ordered is reasonable under the circumstances. The probative value of blood tests in determining paternity is great.[28] The extent of the intrusion is minor. Blood tests are routine in our everyday life, encountered in applying for marriage licenses, going into the military and entering college.[29]

Those courts that have considered similar constitutional challenges to the ordering of blood grouping tests in matters involving paternity have uniformly rejected them.[30] In both *State v. Cornett*[31] and *Anthony v. Anthony,*[32] blood tests to determine nonpaternity in divorce proceedings on grounds of adultery were held to be nonviolative of the child's right to privacy. In *Cortese v. Cortese*[33] blood tests of a child in a paternity proceeding were held to not infringe upon the child's right to privacy.[34]

ing the predecessor statute. The exercise of discretion will not be disturbed unless it has been abused. *In re Mattullath,* 38 App.D.C. 497 (1912). *See also Etty v. Middleton,* D.C. Mun.App., 62 A.2d 371 (1948).

27. The concurring opinion relies on legislative history for the view that D.C.Code 1973, § 16–2343 does not apply to divorce proceedings. Our application of the statute rests on its plain wording because "there is no need to refer to the legislative history where the statutory language is clear." *Ex Parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949).

28. S. Schatkin, Disputed Paternity Proceedings (4th ed. 1967).

29. *Breithaupt v. Abram,* 352 U.S. 432, 77 S. Ct. 408, 1 L.Ed.2d 448 (1957).

30. *See generally* Annot., 46 A.L.R.2d 1000 (1956).

31. 391 P.2d 277 (Okl.1964).

32. 9 N.J.Super. 411, 74 A.2d 919 (1950).

33. 10 N.J.Super. 152, 76 A.2d 717 (1950).

34. *Cortese* was cited with approval in *Breithaupt v. Abram, supra* 352 U.S. at 437, 77 S.Ct. 408.

Appellant submits that the order violates her son's right to privacy as articulated in *Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), and its progeny. Appellant's reliance on *Botsford* as establishing a constitutional right to privacy that restricts this court's authority to order physical examination is misplaced. The Supreme Court in *Camden and Suburban R. Co. v. Stetson*, 177 U.S. 172, 20 S.Ct. 617, 44 L.Ed. 721 (1900), stated specifically that there was no intimation in *Botsford* that physical examination "would be a violation of the Federal Constitution . . . ." *Id.* at 174, 20 S.Ct. at 618. The Court, in *Botsford*, merely held that absent statutory or similar authority, federal courts could not order a physical examination. *Botsford* does not apply to the instant case because, as noted in Part II, *supra*, statutory authority for the physical examination here ordered is found in D.C.Code 1973, § 16–2343.[35] Those cases cited by appellant as *Botsford's* progeny were not blood test cases and are not relevant to our inquiry.

### IV.

▮ The court below did not appoint a guardian ad litem either in its sua sponte order of March 10, 1975 or in its order on reconsideration of March 19, 1975. The appellant never specifically requested such an appointment, but alluded to the absence of a guardian ad litem in her motion for reconsideration. On appeal appellant urges that the absence of a guardian ad litem in this case denies the child due process of law.[36] In view of the procedural history of this case, we believe that the question should be decided at this time.

We note initially that the appointment of a guardian ad litem under Super.Ct.Dom.

Rel.R. 17(c) and (e) is limited, respectively, to parties and to proceedings within the Family Division involving custody of a minor child. Rule 17 does not specifically provide for the appointment of a guardian ad litem in cases such as the instant case, and appellant does not contend that the failure to appoint a guardian ad litem constituted procedural irregularity. However, no one can gainsay the right of the court to appoint a guardian ad litem when necessary for the protection of an infant who is affected by an order of the court. Thus, the question is solely whether the failure of the lower court to exercise its discretion and appoint a guardian ad litem denied the child due process of law. We hold the child has not been denied due process as the interests of the child are being fully and ably protected by the appellant in this proceeding.

As shown in Part III, *supra*, the appellant contended that the order appealed from violated the child's constitutional right to privacy. We concluded that the child's right to privacy was not violated by holding that the intrusion by the taking of the blood would be carried out in a reasonable manner and that the nature of the intrusion was reasonable under the circumstances. Our research convinces us that the appellant fully and ably presented the argument and that the presence of a guardian ad litem would not have resulted in a different conclusion.

This appeal was brought by a mother who was properly concerned over the effect of the lower court's order on the issue of legitimacy in some other proceeding. In vigorously pressing the point that there was no issue of legitimacy in this case, she was exercising her "entirely natural desire

---

35. Also, were Rule 35 to be applied here, it would provide the basis for the order under *Botsford*. *Sibbach v. Wilson*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941); *Beach v. Beach, supra.*

36. Appellant also contends that the child is denied due process for jurisdictional reasons. For the reasons stated in Part I, *supra*, we hold that there has not been a denial of due process on this ground.

to protect her infant son's inheritance." [37] Her efforts on behalf of her child lead to our conclusion in Part I, *supra*, that the child will not be bound by an adjudication in this case on the issue of paternity. A guardian ad litem could have accomplished no more. Accordingly, we conclude that there is no indication in the record that the interests of the appellant conflict with those of her minor child and there is every reason to believe that their interests are identical; that the interests of the child are being fully and ably protected by the appellant; and that the failure to appoint a guardian ad litem in this case does not deny the child due process of law. *Groulx v. Groulx,* 98 N.H. 481, 103 A.2d 188 (1954); *Anthony v. Anthony, supra; State v. Cornett, supra.* See also Annot., 65 A. L.R.2d at 1393.

## V.

The final issue presented by appellant is whether or not the trial court's conditioning of the order for suit money and counsel fees upon the prior filing of blood test results with the court denies appellant due process of law. It is not necessary to determine this issue as the appellee, both at oral argument and in his opposition to appellant's motion to reconsider, has consented to the striking of the condition. Thus, the trial court on remand will strike the "prior to" condition of its March 10, 1975 order and will issue separate orders for (1) suit money and counsel fees and

(2) blood grouping tests.

Accordingly, the proceeding is remanded for action consistent with this opinion.
*So ordered.*

## APPENDIX

The parties to this action, Robert T. L. Beckwith, plaintiff-appellee, and Annemarie Hoffman Beckwith, defendant-appel-

lant, were married in Hartfield, Middlesex County, Virginia, on November 6, 1967. A male child, Timothy was born on October 14, 1968. Appellee-husband filed a verified complaint in the Superior Court on October 30, 1973, for a decree of absolute divorce on the grounds of adultery, stating that the male child born to appellant during their marriage was admitted by her not to be his son. Plaintiff-appellee filed an amended complaint for absolute divorce on November 2, 1973, seeking to add a declaratory judgment that he was not the father of Timothy Lincoln Beckwith. On November 26, 1973, plaintiff-appellee sought by motion to amend the complaint by adding Timothy Beckwith as a party defendant.

On January 9, 1974, defendant-appellant sought by motion to quash service of process and return of service of process. Defendant-appellant then moved to dismiss or strike the amended complaint for declaratory judgment on January 22, 1974. Judge Nunzio, on March 12, 1974, denied the motion to quash service of process and return of service of process, denied plaintiff's motion to amend complaint by adding Timothy Beckwith as a party and granted the motion to dismiss or strike the amended complaint for declaratory judgment that plaintiff is not father of Timothy Beckwith, dismissing the amended complaint. On March 20, 1974, defendant-appellant moved to dismiss the complaint for lack of subject matter jurisdiction, claiming defendant was not a bona fide resident of the District of Columbia. Judge Pryor, on July 31, 1974, denied the motion to dismiss. On August 29, 1974, defendant-appellant moved to enlarge time to respond to the complaint and a consent order was issued by Judge Beard on August 29, 1974, granting the motion.

An answer and counterclaim for divorce were filed by appellant on September 27, 1974, alleging cruelty, adultery, and desertion and requesting alimony and counsel

---

37. Appellant's Memorandum of Points and Authorities in Support of Motion to Dismiss or Strike Amended Complaint for Declaratory Judgment at 6.

fees.[1] Also, on September 27, 1974, the appellant filed a motion for suit money and counsel fees pendente lite pursuant to D.C.Code 1973, § 16–911. On November 20, 1974, the case was assigned to Judge Ryan for all purposes. On March 10, 1975, the court, after consideration of the opposition to the motion and argument by counsel, issued a written order granting appellant's motion for suit money and counsel fees, conditioned, sua sponte, as follows:

> [P]rovided that prior to the payment of the aforesaid sums by the plaintiff [appellee] the Oscar B. Hunter Memorial Laboratory, 915 19th Street, N.W., Washington, D.C. obtains and files with the Court blood tests of the plaintiff Robert T. L. Beckwith, defendant Annemarie Hoffman Beckwith, and the male child born to the defendant in Williamsburg, Virginia, on the 14th day of October 1968, the Laboratory to arrange for the work to be done in West Germany, and counsel for the plaintiff and defendant to make the necessary arrangements for the tests with the Laboratory; all costs incident to the making and filing of the aforesaid tests to be paid by plaintiff.

The appellant on March 3, 1975, filed with the trial court a motion to reconsider portions of its "ruling on motion of defendant," which this court considers as a motion for reconsideration of the trial

court's March 10, 1975 written order.[2] On March 19, 1975, the trial court in an "Opinion and Order" filed on April 2, 1975, addressed itself to the motion for reconsideration and set forth its reasons for denying it and reaffirming the court's order of March 10, 1975. It is from the denial of the motion for reconsideration that a Notice of Appeal was filed.[3]

KELLY, Associate Judge (concurring):

While I do not doubt that the trial court had authority to order the appellant to submit herself and her child to blood grouping tests, I am not persuaded that D.C.Code 1973 § 16–2343 is the source of this authority. My reading of the legislative history of § 16–2343 leads me to believe that it applies only to proceedings to establish paternity, D.C.Code 1973, § 11–1101(11), actions brought against a putative father to enforce support of his child. D.C.Code 1973, §§ 11–1101(3), (10) and actions seeking custody of minor children, D.C.Code 1973, § 11–1101(4).

As the majority states, the predecessor statute to D.C.Code 1973, § 16–2343 was limited specifically to the paternity cases, the pertinent language being: "When it is relevant to the prosecution or defense of an illegitimacy action . . . ." In its present form, the section provides:

> When it is relevant to an action over which the Division has jurisdiction under section 11–1101, the court may direct

1. An amended counterclaim was filed on March 10, 1975, adding a "Counter defendant (co-respondent)."

2. The motion to reconsider was filed on March 3, 1975, seven days before the actual written order of March 10 was filed. The motion for suit money and counsel fees was filed September 27, 1974, but apparently not heard until February 13, 1975. (A jacket entry on that date states that an order was to be presented.) A proposed order was mailed by appellee to appellant on February 19, 1975, but was not presented to the trial judge until March 10, 1975, due to, as stated by the trial judge, "deficiencies in the handling of this pleading by the clerks office. . . ."

While the motion for reconsideration was directed to the court's ruling of February 13, 1975, and was filed some seven days before the actual written order, it nonetheless encompassed all points referred to in the signed March 10, 1975 order. Thus, in the circumstances of this case the court construes the motion for reconsideration as being from the March 10, 1975 order.

3. The Notice of Appeal was filed on April 4, 1975, from the "order of this court entered on the 14th day of March, 1975." The reference to March 14, 1975, is obviously a typographical error, and has been so considered by the parties, in that the date of the order appealed from is March 19, 1975.

that the mother, child, and the respondent submit to one or more blood tests to determine whether or not the respondent can be excluded as being the father of the child, but the results of the test may be admitted as evidence only in cases where the respondent does not object to its admissibility. Where the parties cannot afford the costs of a blood test, the court may direct the Department of Public Health to perform such tests without fee. D.C.Code 1973, § 16–2343.

Concededly, the first clause of the section as amended appears to apply this provision to all actions under which the Division has jurisdiction pursuant to D.C.Code 1973, § 11–1101, including divorce, where paternity is relevant. In my judgment, however, this interpretation is not supported by its legislative history.

The provision was first introduced in the House as part of House Bill No. H.R. 16196, 91st Cong., 2d Sess. (1972). In that bill the provision appeared, in the identical language in which it ultimately was enacted, under the heading *"Subchapter II.—Paternity Proceedings."* The committee report which accompanied H.R. 16196 explained that:

> The provisions of this subchapter relate to the establishment of paternity and to provide for the support of children born out of wedlock. [H.R. Rep. No. 907, 91st Cong., 2d Sess. at 58 (1972).]

The committee noted that one purpose of the subchapter was to separate jurisdiction over paternity proceedings from that of juvenile cases and to provide that paternity proceedings become civil rather than quasi-criminal as had been the case under then existing statutes. *Id.* at 58–9. Another stated purpose of the subchapter was to allow the Corporation Counsel to "bring an action on behalf of a wife or child . . . to enforce the support of the wife or child

where it appears that a public burden has been incurred or may be incurred." *Id.* at 59. With respect to blood tests, the report stated:

> When blood tests are relevant to an action filed *under this subchapter*, the court may direct the mother, child, and respondent to submit to one or more tests to determine whether the respondent can be excluded as being the father of the child. The results of any test may be admitted only where the respondent does not object. [*Id.*, at 59; emphasis supplied.]

No mention is made in the report of any legislative intent to extend the application of the blood test provision beyond those proceedings specifically referred to in the report. Consequently, I do not believe we can infer that Congress intended to extend this provision to divorce proceedings. Accordingly, I would rest the trial court's authority to order the blood tests on Super. Ct.Dom.Rel.R. 35(a), which provides:

> *Order for Examination.* When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.[1]

The notice and motion requirements of the rule, as the majority notes, have been served by the attention given to the motion for reconsideration.

1. *See Beach v. Beach,* 72 App.D.C. 318, 114 F.2d 479 (1940).